**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Wali Ahmed CHOWDHURY,**
**Defendant–Appellant.**

No. 97–2246.

United States Court of Appeals,
Sixth Circuit.

Argued June 10, 1998.

Decided March 3, 1999.

Rehearing Denied April 12, 1999.

Ralph M. Hursey (argued), Ft. Lauderdale, FL; Sidney Kraizman (briefed), Kraizman & Kraizman, Detroit, MI, for Defendant–Appellant.

Kathleen Moro Nesi (argued), Office of the U.S. Attorney, Detroit, MI; Krishna S. Dighe (briefed), Office of the U.S. Attorney, Detroit, MI, for Plaintiff–Appellee.

Before: BATCHELDER, DAUGHTREY, and GILMAN, Circuit Judges.

## OPINION

DAUGHTREY, Circuit Judge.

Defendant Wali Ahmed Chowdhury appeals his conviction of marriage fraud, for which he was sentenced to six months incarceration and three years of supervised release. Specifically, Chowdhury contends that the trial court (1) erred in instructing the

jury on the marriage fraud statute; (2) abused its discretion in restricting his testimony concerning his reasons for leaving Bangladesh; (3) erred in recommending deportation of the defendant at sentencing; and (4) failed both to address Chowdhury personally and to determine whether he wished to make a statement before imposing the sentence. We find no reversible error and affirm the judgment of conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

Wali Ahmed Chowdhury, a Bangladeshi citizen, was admitted into the United States in April 1988, using a Bangladesh passport with his photograph but issued in the name of another, Alim Uddin Chowdhury. He possessed a visa that allowed him to remain in the country for two months. Chowdhury applied for political asylum in the United States, but his application was denied by an immigration judge, who nevertheless granted Chowdhury "withholding of deportation." Unlike a permanent legal resident or a refugee, a person whose deportation has been withheld may not petition for family members to enter the country, may not travel outside of the United States, and is not eligible for certain other benefits, although he may obtain employment authorization. This status is indefinite, but it is subject to change, and Chowdhury testified that it was his understanding that it could be withdrawn at any time.

Chowdhury entered the United States through Texas and lived and worked in New York for several years before moving to Michigan in 1991 or 1992. In October 1992, he married Alonda Shepard, a United States citizen, who then filed an initial immigration petition on Chowdhury's behalf. An Immigration and Naturalization Service officer, Darlene Katz, approved the petition after interviewing the couple. About three months later, Katz revoked the approval after receiving a letter from Chowdhury in which he notified the Immigration and Naturalization Service that he was divorcing Ms. Shepard. The default judgment of divorce was entered on August 30, 1993.

On October 22, 1993, Chowdhury married Beverly Davis, and it is this marriage for which he was charged with marriage fraud. According to Davis, she was introduced to Chowdhury by Syed Manki Miah, who is known by his friends as "Sam." She testified that she had known Sam for about four years and that the second time she met with him he mentioned Wali to her. At this second visit, she and Sam discussed the possibility of her marrying Wali, whom she had never met, in exchange for money. According to Davis, Sam told her she would get $500 when she got married, $500 when she went to see the lawyer, and $500 if she went to immigration. She also said that Sam told her that she did not have to have sexual relations with Wali. Some time after this conversation, Sam brought Wali to meet Davis and to make arrangements. According to Davis, during this visit Wali agreed to marry her after he and Sam spoke with each other in another room in their native language.

Davis and Chowdhury were married by an imam in the presence of several of Chowdhury's friends. There were no invitations to the wedding, and Davis did not have any friends or family present at the ceremony. Chowdhury gave Davis a wedding ring, but not an engagement ring, and there was no formal reception or honeymoon.

After the ceremony, the married couple and a friend of Chowdhury went to McDonald's, and then the couple went back to Davis's house. Chowdhury and Davis gave different accounts of what followed. Chowdhury testified that he and his new wife consummated the marriage. More specifically, he said they engaged in sex twice, but that she did not like having sex with him, and he did not understand why. He explained that he thought that perhaps she liked his money and not him, and that this was the reason he later decided to divorce her. Chowdhury testified that he loved Davis when he married her and that she was "really nice to him." He said that he gave her $500 to buy something to wear for the wedding, but she told him she would rather save the money.

According to Chowdhury, about a week after the wedding, Davis asked him about his

family, and he told her that he had not seen his mother in almost 11 years. She then told him that she knew all about how "to apply" for his immigration status because her brother and sister had married "foreign people," and she suggested that they hire a lawyer to help with his application. He testified that the reason he went to see a lawyer was that Davis had told him that he could get permission to visit his mother. On cross-examination, however, Chowdhury admitted that the lawyer whom they went to see was the same lawyer who helped him fill out his documents with respect to his application with Alonda Shephard. Still, he insisted that he did not know that he had to get married to stay in this country.

In contrast, Davis testified that they never consummated the marriage and that Chowdhury never lived with her. She said that he gave her $500 cash after they got married and another $500 after they met with the lawyer.

After Chowdhury divorced Davis in August 1995, he married his current wife, who is also from Bangladesh and with whom he has an infant son. Chowdhury has been employed at all times since he entered the United States, and at the time of his trial he was working as a busboy.

Darlene Katz assigned special agent Greg Adducci to investigate Chowdhury and Davis for marriage fraud in September 1994. Adducci and his partner visited Davis at home in the evening and found that Chowdhury was not there and that the only items of his clothing in the house were two pairs of pants. After questioning Davis about her marriage, the agent told her he did not believe her story and that marriage fraud is a crime. Adducci read Davis her rights, and Davis waived her rights and agreed to give a statement. Davis entered into an agreement with the government the day before she testified at Chowdhury's trial. According to the agreement, the government would not prosecute her for marriage fraud if she testified truthfully.

At the conclusion of the trial, a jury found the defendant guilty of marriage fraud, in violation of 8 U.S.C. § 1325, and the district court sentenced him to six months in federal prison and three years of supervised release. At the sentencing hearing, the judge said that he would recommend deportation to the Immigration and Naturalization Service, although this was not suggested in the Presentence Investigation Report. Chowdhury now appeals his conviction and the recommendation of deportation.

## ANALYSIS

This court "reviews a jury charge in its totality to determine whether it fairly and adequately submits the issues and law to the jury." *United States v. Milligan,* 17 F.3d 177, 182 (6th Cir.1994). "A judgment may only be reversed if the instructions, viewed in their totality, were confusing, misleading or prejudicial." *Id.* "Where, in formulating instructions, the 'district court engages in statutory construction as a matter of law, ... [the Sixth Circuit] review[s][the] conclusions *de novo.'*" *United States v. Buckley,* 934 F.2d 84, 87–88 (6th Cir.1991) (quoting *United States v. Brown,* 915 F.2d 219, 223 (6th Cir. 1990)).

Where the issue is properly preserved for appeal, we will reverse a conviction for failure to give a requested jury instruction only when that requested charge is a correct statement of law, is not substantially covered by the charge already submitted to the jury, and concerned a point so important to the trial that the failure to give it substantially impaired presentation of the defendant's theory of the case. *United States v. Leal,* 75 F.3d 219, 227 (6th Cir.1996).

Finally, we review the trial court's determination of relevancy for abuse of discretion. *United States v. Hawkins,* 969 F.2d 169, 174 (6th Cir.1992) (per curiam).

### 1. *Jury Instructions*

The statute under which Chowdhury was charged and convicted provides:

Any individual who knowingly enters into a marriage for the purpose of evading any provision of the immigration laws shall be imprisoned for not more that 5 years, or fined not more that $250,000, or both.

8 U.S.C. § 1325(c). The district court described the elements of the offense to the jury as follows:

First, that Wali Chowdhury entered into a marriage with Beverly Davis. Second, that Wali Chowdhury knowingly entered into the marriage for the purpose of evading the United States immigration laws. Third, that Wali Chowdhury knew or had reason to know of the relevant immigration laws.

During trial Chowdhury objected to several aspects of these instructions. His principal argument on appeal concerns the court's instruction with respect to the third element of the charged offense, "that Wali Chowdhury knew or had reason to know of the relevant immigration laws." The defendant wanted this instruction to read that the defendant "kn[ew] that this was a criminal violation of the United States Immigration Laws." He argues that the "had reason to know" language improperly creates criminal liability for marriage fraud based upon mere negligence and that it likely confused the entire instruction to the jury, citing *Cheek v. United States,* 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), a criminal tax case, and *Liparota v. United States,* 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), a Food Stamp Fraud Act case. In response to the defendant's argument, we must first determine whether the third element of the district court's jury instruction was necessary at all. Does the marriage fraud statute's use of the language "knowingly" and "for the purpose of evading any provision of the immigration laws" require proof that the defendant knew he was violating the law, as the district court concluded? Or does it require only the factual knowledge generally necessary when a statute prohibits a knowing violation of a statute?

Although we have found no case law in this circuit or elsewhere interpreting the intent requirement of the marriage fraud statute, the Supreme Court's recent decision in *Bryan v. United States,* 524 U.S. 184, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998), is instructive. In *Bryan,* the Court considered the meaning of the term "willfully" as it is used in the statute that criminalizes dealing in firearms without a federal license. Explaining that the word "willfully" has many meanings depending on its context, the Court held that "[a]s a general matter, when used in the criminal context, a 'willful act' is one undertaken with a bad purpose." *Id.* at 1945. In light of this definition, the Court upheld jury instructions that read:

A person acts willfully if he acts intentionally and purposely and with the intent to do something the law forbids, that is, with the bad purpose to disobey or to disregard the law. Now, the person *need not be aware of the specific law or rule that his conduct may be violating.* But he must act with the intent to do something that the law forbids.

*Id.* at 1944 (emphasis added). Under this definition, the government must prove more than the defendant's knowledge of the facts that constitute the offense, as is required by a statute punishing knowing violations of the law. However, in showing that the defendant knew his conduct was unlawful, the government need not prove that the defendant knew the specific law being violated. *Id.* at 1946.

In rejecting the defendant's argument that "willfully" requires proof of knowledge of the specific law being violated, the *Bryan* court explained that cases in which "willfully" has been interpreted to require specific intent involved "highly technical statutes that present the danger of ensnaring individuals engaged in apparently innocent conduct." *Id.* (citing *Cheek,* 498 U.S. at 201, 111 S.Ct. 604 (involving willful violations of tax laws); *Ratzlaf v. United States,* 510 U.S. 135, 138, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) (involving willful violations of anti-structuring provisions)). The firearms statute at issue in *Bryan,* the Court held, was not such a statute. The Court reasoned that the danger of convicting individuals engaged in apparently innocent activity was mitigated in *Bryan* by the required finding that the defendant know that his conduct was unlawful. *Id.* at 1947.

◼ We believe that the language "knowingly enters a marriage for the purpose of evading any provision of the immigration laws" is best understood as another way of saying that in knowingly entering a mar-

riage, the defendant willfully violated the immigration laws. Therefore, for purposes of interpreting the marriage fraud statute, we adopt the analysis provided by the Supreme Court in *Bryan.* Accordingly, we reject the defendant's argument that the government must prove that the defendant knew the specific law being violated. Like the firearms statute at issue in *Bryan,* the marriage fraud statute is not so technical that it requires such specific knowledge. Instead, it is enough that the government prove that "the defendant acted with an evil-meaning mind, that is to say that he acted with knowledge that his conduct was unlawful." *Id.* at 1946.

■ Having found that the marriage fraud statute requires the government to prove that the defendant knew that his conduct was unlawful, we next consider whether the district court's instruction adequately informed the jury of this requirement. The instruction required the jury to find beyond a reasonable doubt that the defendant knew or had reason to know of the relevant immigration laws. In addition, the court told the jury that "[t]he government need not prove that [the defendant] knew what particular law he was violating, but rather indeed only show that he knew he was violating some immigration law." These instructions made clear that the offense required the jury to find that the defendant actually knew that his conduct was unlawful.

The fact that the court instructed the jury that it could convict the defendant if he had "reason to know" of the relevant immigration laws was only a short-hand method of telling the jury that one way to find that defendant had the requisite knowledge was to infer from the facts and circumstances surrounding his conduct that he must have known that he was violating the law. This type of inference was sanctioned in *Liparota,* where the Supreme Court said that "the Government may prove by reference to facts and circumstances surrounding the case that petitioner knew that his conduct was unauthorized and illegal." 471 U.S. at 434, 105 S.Ct. 2084. When the charge in dispute is viewed "in its totality[, . . . ] it fairly and adequately submits the issues and law to the jury." *United States v. Milligan,* 17 F.3d at 182. Hence,

we find no error in conjunction with the court's instruction on the elements of the offense of marriage fraud.

■ Nor do we find error in the district court's rejection of the defendant's proposed theory-of-the-case instruction. The requested instruction was as follows:

The defense says that: At the time that Wali Chowdhury married Beverly Davis he intended to live with her as husband and wife. The defendant Wali Chowdhury did not marry Beverly Davis with the intention and the sole purpose of evading the United States Immigration Laws. He did not intend to violate the criminal immigration laws.

Although a district court is required to instruct the jury on the theory of defense, it is not error to refuse to give "instructions which merely represent a defendant's view of the facts of the case," rather than a distinct legal theory. *United States v. Frost,* 125 F.3d 346, 372 (6th Cir.1997). We conclude that the proposed instruction in this case was no more than a recitation of Chowdhury's view of the facts. It was not reversible error to decline to give it.

■ Finally, Chowdhury also contends that the instructions should have included as part of the second element "*with the intention* and . . . for the *sole* purpose of evading the United States immigration laws." However, nothing in the statute requires the additional language proposed by the defendant. Moreover, adding "with the intention" would simply be cumulative to language already contained in the charge, *i.e.,* "for the purpose," which tracks the language of the statute.

### 2. *Relevancy Ruling*

■ Chowdhury contends that the district court abused its discretion in excluding as irrelevant both his testimony concerning why he left Bangladesh and entered the United States with the passport of another person and the circumstances surrounding his asylum application and declaration in support of his application. During the redirect examination of defendant, the district court allowed Chowdhury to testify that he feared for his

life in his country, but the court did not allow him to testify about the reasons for his fear and why he sought political asylum in the United States.

Chowdhury argues that the government's attack on his credibility through cross-examination about the details of his entry into the United States with someone else's passport "opened the door" to evidence which would substantiate his statement that he feared for his life. During trial, Chowdhury argued that the relevance of his testimony and the asylum documents was that they would show (1) why he asked for political asylum, (2) that in his request for asylum he gave his proper name, and (3) that he had admitted on his asylum application that he used the passport of another person. The district court concluded that Chowdhury had already testified to the second two points, and the court then allowed Chowdhury's attorney to ask him why he had used the passport of another person. Chowdhury testified that he feared for his life in his country and that he feared "political threat." When his attorney asked him why he feared for his life, the court sustained the government's objection because the question was going "too far afield." We conclude that the district court did not abuse its discretion in limiting Chowdhury's testimony concerning his entry into the United States and his application for asylum.

Later in the trial, after the jury had been excused, Chowdhury's attorney again tried to convince the district court to admit the asylum documents as exhibits. At this point, the district court told him that an independent ground for their exclusion was that they were inadmissible hearsay. Counsel did not offer the district court any reason why the documents were not inadmissible as hearsay. On appeal, Chowdhury urges this court to read the documents, but again does not explain why they are not inadmissible as hearsay. Chowdhury has therefore waived any argument to support their admission into evidence, and, absent plain error, we must uphold the district court's decision to exclude the documents. *See United States v. Sanderson,* 966 F.2d 184, 187 (6th Cir.1992). We conclude that there are no grounds for finding plain error.

### 3. *Recommendation of Deportation*

When the district court announced during the sentencing hearing that it would "recommend to the Immigration and Naturalization Service deportation," counsel for Chowdhury objected on the ground that the defendant was not given notice that the court might do this. Notice and a very detailed procedure are required in order for a district court to *order* deportation, 8 U.S.C. § 1252a(c), which it has authority to do in some circumstances; but in the present case, the court merely *recommended* deportation. The defendant has not offered any legal authority for requiring notice under these circumstances.

### 4. *Allocution*

Chowdhury claims that the district court erred when it failed to address him personally prior to sentencing, as required by Federal Rules of Criminal Procedure 32(c)(3)(C). Rule 32(c)(3)(C) provides that before imposing sentence, a court must "address the defendant personally and determine whether the defendant wishes to make a statement and to present any information in mitigation of the sentence." We have previously held that "a trial court's failure to follow Rule 32's mandate is reversible error." *United States v. Riascos–Suarez,* 73 F.3d 616, 627 (6th Cir.1996).

In *United States v. Thomas,* 875 F.2d 559, 563 (6th Cir.1989), we announced that "[t]his court construes Rule 32 quite literally and expects each judge to inform each defendant that he and his attorney *both* retain an individual right to address the court. Before the conclusion of the sentencing hearing, *the district judge must personally and unambiguously invite the defendant to speak in his own behalf.*" (Emphasis in original.) *See also Green v. United States,* 365 U.S. 301, 305, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961) (holding that "trial judges should leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing"). The Court in *Green* was interested in "avoid[ing] litigation arising out of ambiguous records in order to determine whether the trial judge did address himself

to the defendant personally." 365 U.S. at 305, 81 S.Ct. 653. Moreover, the *Green* court explained that a personal invitation to the defendant rather than to defendant's counsel was important because "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." *Id.* at 305, 81 S.Ct. 653.

At the sentencing hearing in this case, the district judge informed the defendant, "You may address the Court, Mr. Chowdhury, or your lawyer may address it on your behalf." Although the defendant did not make an oral statement at that time, in response to the court's invitation to his client, defense counsel indicated that Chowdhury had submitted a written statement to the court.[1] He then argued mitigating circumstances to the court, touching on virtually every fact set out in his client's written statement. After additional dialogue among the attorneys and the court, the district judge pronounced sentence and again invited the defendant to speak in his own behalf:

> The Court: Did you wish to say something? I assumed Mr. Kraizman [defense counsel] was talking for him. Did you wish to say something?
>
> The Defendant: No.
>
> The Court: You're entitled to.
>
> The Defendant: No.
>
> The Court: Thank you.

Given the submission of the defendant's personal statement in writing and the court's

repeated invitations to him to speak, we are satisfied that the record demonstrates substantial compliance both with the text of Fed.R.Crim.P. 32(c)(3)(C) and with the opinions of this court and the Supreme Court interpreting Rule 32. We therefore reject the defendant's contention that this case should be remanded to give Chowdhury yet another opportunity to address the court on the subject of the appropriate sentence, and we affirm the sentencing order in all respects.

### CONCLUSION

For the reasons set out above, we AFFIRM the district court's judgment of conviction and the sentencing order.

---

1. Defendant's statement is reproduced in its entirety as follows:

*DEFENDANT'S STATEMENT*

I was charged in the Indictment with entering into a fraudulent marriage on 10/22/93 for the purpose of evading the United States Immigration Laws.

My mother is in Bangladesh. I love my mother, and I wanted to see her and to bring her over to this country.

At the jury trial in this case the jury found that I was guilty as charged of marriage fraud.

I have lived and worked in the United States for the last nine years, and I am currently employed at the Big Fish Restaurant located on Fourteen Mile Road as a Busboy. I am married and live with my wife and our three month old son in Detroit. I have no prior record or conviction. Over the last three years I have been active in my mosque—Majuduzn-

oor, and at Trial Mr. Motin Mia testified that I have a good reputation in my community as a good person and as someone who helps others.

In March, 1989 a United States Immigration Judge at a Hearing denied my request for asylum but did grant me a "Withholding of Deportation." That was for the reason that my life was in danger in the event that I returned to Bangladesh. I believe that my life would still be in danger now if I was returned to Bangladesh.

For the sake of my wife, myself, and my three month old son, who was born in this country and is a United States citizen, I am requesting that the Court recommend to the Immigration and Naturalization Service (INS) that I not be deported.

/s/ Wali Chowdhury

Dated: August 04, 1997