omitted).  Therefore, "[a]ggravating factors, other than a prior conviction, that increase the penalty from a nonmandatory minimum sentence to a mandatory minimum sentence, or from a lesser to a greater minimum sentence, are now elements of the crime to be charged and proved."  *Id*. at 351-352.

In the case at bar, *Apprendi* is inapplicable for two reasons.  First, the jury was instructed to return a verdict of guilty on Count Two of the indictment if "[t]he conspiracy involved at least 1,000 kilograms (or 2,205 pounds) of marijuana."  Jury Instructions, Joint Appendix at p. 439.  Therefore, the jury has already found that the appellant is responsible for the requisite amount of drugs beyond a reasonable doubt.  Second, the statutory penalties available for a violation of 21 U.S.C. § 848(e)(1)(A) include imprisonment for life.  Therefore, the sentence in this case does not exceed the statutory maximum contemplated by law.  Accordingly, the district court's determination regarding sentencing is affirmed.

### V. CONCLUSION

Therefore, the judgments of the district court are **AFFIRMED**.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0346P (6th Cir.)
File Name:  01a0346p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*

ELISEO CALDERA ALVAREZ,
JR. (00-1285); RAUL
SANTIAGO GONZALES-
GARCIA (00-1286),
    *Defendants-Appellants.*

Nos. 00-1285/1286

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No.  98-00110—Gordon J. Quist, District Judge.

Argued:  August 7, 2001

Decided and Filed:  September 28, 2001

Before:  SUHRHEINRICH and SILER, Circuit Judges;
HOOD, District Judge.

---

*The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

————————————

**COUNSEL**

**ARGUED:** Christopher P. Yates, FEDERAL PUBLIC DEFENDERS OFFICE, Grand Rapids, Michigan, Lawrence J. Phelan, Grand Rapids, Michigan, for Appellants. John C. Bruha, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Christopher P. Yates, FEDERAL PUBLIC DEFENDERS OFFICE, Grand Rapids, Michigan, Lawrence J. Phelan, Grand Rapids, Michigan, for Appellants. John C. Bruha, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

————————————

**OPINION**

————————————

JOSEPH M. HOOD, District Judge. This combined appeal from the Western District of Michigan raises five distinct challenges to the appellants' convictions and sentences under 21 U.S.C. § 846, 21 U.S.C. § 841, 21 U.S.C. § 848(e)(1)(A), and 18 U.S.C. § 2. For the reasons stated in this Opinion, we **AFFIRM** the district court.

## I. BACKGROUND

Arriving home from their son Eric's little league baseball game on June 20, 1996, Debra and Edward Perez were met in their driveway by the two appellants. The appellants went into the house and discussed the weather with Edward Perez, who offered them some beer. After a few minutes, Edward Perez and the two appellants went out to the barn on the Perez property. About twenty minutes later, Alvarez came up to the sliding glass door at the house to ask Mrs. Perez where the family dog was. Max, a dog known for his mean disposition, was in the house with Mrs. Perez. Alvarez closed the door and walked off the home's back porch.

determination increased the maximum penalty for the crime charged in the indictment." *Rebmann*, 226 F.3d at 524. *Apprendi* explicitly applies only to those situations in which "a factual determination made under a lesser standard of proof than the reasonable doubt standard increases the penalty for a crime beyond the statutory maximum." *Garcia*, 252 F.3d at 842 (citations omitted).

The rule in *Apprendi* has "radically departed from this court's prior treatment of the quantity of drugs as a sentencing factor rather than as an element of the offense." *In re Clemmons*, No. 00-3941, 2001 WL 869300, *2 (6th Cir. August 1, 2001) (citing *United States v. Neuhausser*, 241 F.3d 460, 464-65 (6th Cir. 2001)). In post-*Apprendi* cases "where the factual determination of the quantity of drugs attributable to the defendant significantly impacts the appropriate sentencing range," the trial court must allow a jury to "decide on the quantity of the drugs beyond a reasonable doubt." *Id.*; *see also United States v. Page*, 232 F.3d 536, 534 (6th Cir. 2000); *United States v. Flowal*, 234 F.3d 932, 936 (6th Cir. 2000).

However, this court may

still rely upon a district court's finding of relevant conduct by a preponderance of the evidence...but only insofar as it 'operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it' and does not 'alter[ ] the maximum penalty for the crime committed nor create[ ] a separate offense calling for a separate penalty.'

*United States v. Strayhorn*, 250 F.3d 462, 470 (6th Cir. 2001) (citing *McMillan v. Pennsylvania*, 477 U.S. 79, 91-92 (1986)). To put it another way, the Sixth Circuit has determined that "the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed, such as moving up the scale of mandatory minimum sentences, invokes the full range of constitutional protections required for 'elements of the crime.'" *United States v. Ramirez*, 242 F.3d 348, 351 (6th Cir. 2001)(citations

an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment ....

*Id.* In order to a secure a conviction, this statute requires that the defendant be working "in furtherance" of the continuing criminal enterprise. *Id.* The legislation does not require personal responsibility for each action taken by the conspiracy. Gonzalez's participation furthered the work of the criminal enterprise as a whole, and the conspiracy's trafficking of over 1,000 kilograms of marijuana may be imputed to Gonzalez without violating 21 U.S.C. § 848(e)(1)(A)'s conviction requirements. As Gonzalez clearly acted as an aider and abettor to further the work of the continuing criminal enterprise, the court will affirm the district judge's findings on this matter.

## E. Noncompliance with *Apprendi v. New Jersey*

The Sixth Circuit has dealt with a number of cases involving the application of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The Supreme Court established in *Apprendi* that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490. "This circuit has applied *Apprendi* to drug cases, requiring that factual determinations which increase the maximum sentence for the crime charged in the indictment must be made 'beyond a reasonable doubt.'" *United States v. Garcia*, 252 F.3d 838, 842 (6th Cir. 2001) (quoting *United States v. Rebmann*, 226 F.3d 521, 524 (6th Cir. 2000)).

The *Rebmann* court determined that "the responsibility of an appellate court reviewing imposition of 'enhancements' post-*Apprendi*...is to examine whether the sentencing factor in this case was a factual determination, and whether that

When Mrs. Perez went to bed at about midnight, the barn lights were still on. She woke up at about 1:30 a.m. and walked out to the barn to determine why her husband had not returned to the house. On her way to the barn, she realized that the appellants' car was no longer in her driveway. Mrs. Perez found her husband in the back room of the barn, handcuffed and bloody, lying face-down on the floor.

The autopsy showed that Edward Perez had facial injuries consistent with a knife having been drawn across his nose, chin, and mouth. He had a two-inch bruise on his cheek, and various other blunt force injuries to his face. The palm of his right hand had a stab wound in an L-shape, possibly indicating that the knife had been twisted. The left hand also had a stab wound that cleanly severed two metacarpal bones. Perez was stabbed in the left arm, received four blunt force injuries to the lower chest in a precise rectangular pattern, and had four similarly-patterned lacerations to the back of the head, a fractured skull, and a fatal stab wound to the left chest. He was pronounced dead at the scene.

Trial testimony indicated that Edward Perez's sole source of income came from the sale of marijuana, which was purchased from Alvarez. Gonzales-Garcia had met with Perez on at least two other occasions before his death on June 20, 1996. In April of 1996, Gonzales-Garcia accompanied Alvarez to collect money from Perez. Over Memorial Day weekend, 1996, Alvarez and Gonzales-Garcia arrived once again, looking for Edward Perez as the Perez family was moving into a new home. Testimony indicates that Perez owed a large amount of money to the defendants for unpaid shipments of marijuana.

On March 11, 1999, a grand jury in the Western District of Michigan returned a two-count superseding indictment against the appellants and two other defendants. Count One charged the appellants with conspiring to distribute marijuana from 1991 to July 1996. Count Two alleged that the appellants intentionally killed Edward Perez on June 20, 1996, in the course of the conspiracy to distribute marijuana.

The appellants were tried separately, and both were convicted. Gonzales-Garcia was sentenced to the statutory maximum of 240 months imprisonment on Count One, and life imprisonment on Count Two. Alvarez was sentenced to two concurrent life sentences for the convictions on Counts One and Two. Both Defendants have filed a timely notice of appeal.

## II.  JURISDICTION

The Court of Appeals has jurisdiction over the direct appeal of criminal convictions and sentences, pursuant to Title 18 U.S.C. § 3742(A) and Title 28 U.S.C. § 1291.

## III. CLAIMS OF ERROR

The appellants raise five separate claims of error.  The first claim of error involves the assertion that the district court erred by excluding out-of-court statements made by an individual who claimed that Perez also owed him money for shipments of marijuana.  In situations such as this, the court reviews the district court's evidentiary ruling on the admissibility of a hearsay statement under Federal Rule of Evidence 804(b)(3) for abuse of discretion. *See United States v. Price*, 134 F.3d 340, 345 (6th Cir. 1998)*; United States v. Hilliard*, 11 F.3d 618, 619 (6th Cir. 1993).

The second and third claims of error emanate from the district court's instructions to the juries.  Gonzales-Garcia alleges that the district judge's failure to instruct the jury regarding Alvarez's relevant conduct is reversible error.  A district court's refusal to give a specifically requested jury instruction is reviewed for abuse of discretion. *See Fisher v. Ford Motor Co.*, 224 F.3d 570, 575 (6th Cir. 2000); *United States v. Baker*, 197 F.3d 211, 218 (6th Cir. 1999); *United States v. Frost*, 914 F.2d 756, 764 (6th Cir. 1990).  Also, both defendants allege that the district court's jury instructions elucidating the term "intentional killing" constituted reversible error.  Where the formulation of jury instructions required the district court to engage in statutory construction as a matter of law, the Court reviews the conclusions *de novo*.

443 U.S. 307, 319 (1979)).   An appellant "claiming insufficiency of the evidence bears a heavy burden." *United States v. Maliszewski*, 161 F.3d 992, 1005 (6th Cir. 1998). The United States may "meet its burden through circumstantial evidence alone, and such evidence need not exclude every possible hypothesis except that of guilt." *United States v. Salgado*,  250 F.3d 438, 446 (6th Cir. 2001).

In assessing the sufficiency of the evidence, the court does "not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury." *Id.* (citations omitted).  When reviewing a defendant's claim of insufficiency, the court draws "all available inferences and resolve[s] all issues of credibility in favor of the jury's verdict." *Id.*  Therefore, the review on this type of issue is "quite limited." *United States v. Crossley*, 224 F.3d 847, 855 (6th Cir. 2000) (citing *United States v. Morrow*, 977 F.2d 222, 230 (6th Cir. 1992)).

Although the jury in this case was not required to report a separate finding regarding the quantity of drugs distributed to support this conspiracy, the evidence presented at trial allowed the jury to conclude that the conspiracy dealt with over 1,000 kilograms of marijuana.  The jury made this finding by returning a guilty verdict on Count Two of the indictment.  In order to return such a verdict, the jury was required to determine that "[t]he conspiracy involved at least 1,000 kilograms (or 2,205 pounds) of marijuana."  Jury Instructions, Joint Appendix at p. 439.  As the appellant does not assert that the evidence failed to support a finding that the conspiracy involved over 1,000 kilograms of marijuana, the court will only address the trial judge's determination that Gonzalez was not required to be personally liable for the 1,000 kilograms of drugs in order to be convicted under Count Two of the indictment.

Count Two asserted a claim against Gonzalez under 21 U.S.C. § 848(e)(1)(A), which states that:

any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in

The standard of review in evaluating a claim of error in a trial court's charge to the jury is whether the charge, when considered as a whole, "fails accurately to reflect the law." *United States v. Wuliger*, 981 F.2d 1497, 1501 (6th Cir. 1992) (citing *United States v. Busacca*, 863 F.2d 433, 435 (6th Cir. 1988)). Here, as the trial court's instructions accurately reflected the statutory provisions of 21 U.S.C. § 848, in conformance with Count Two of the indictment, this court finds no error in the district court's instructions.

### D.   Sufficiency of Evidence Regarding Quantity of Marijuana

Appellant Gonzalez asserts that the district court improperly denied his Rule 29 motion for a judgment of acquittal on Count Two of the indictment. Gonzalez argues that he is not guilty of violating 21 U.S.C. § 848 because he is not personally responsible for the 1,000 kilograms of marijuana required for a conviction under this statute. The facts presented in this case make it clear that Gonzalez did not personally transport or sell 1,000 kilograms of marijuana; therefore, this court must determine if the district court correctly ruled that a defendant does not have to be personally responsible for the entire quantity of drugs prescribed by statute. While 1,000 kilograms is the prerequisite amount required for a conviction, the district court ruled that said amount could be imputed to Gonzalez as the entire conspiracy illegally sold and transported that quantity of marijuana. In essence, Gonzalez was found to be a member of the conspiracy, one who aided and abetted the illegal transport and sale of the prerequisite quantity of drugs; therefore, Gonzalez was appropriately convicted under Count Two of the indictment.

In reviewing the denial of a motion for acquittal, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Landham*, 251 F.3d 1072, 1083 (6th Cir. 2001) (citing *Jackson v. Virginia*,

*See United States v. Chowdhury*, 169 F.3d 402, 405 (6th Cir. 1999); *United States v. Buckley*, 934 F.2d 84, 87-88 (6th Cir. 1991); *United States v. Brown*, 915 F.2d 219, 223 (6th Cir. 1990).

The fourth and fifth claims of error involve the district court's determination that the amount of marijuana involved in this conspiracy exceeded 1,000 kilograms, and that said amount could be utilized to calculate the sentences for both Appellants. Gonzales-Garcia claims that there was insufficient evidence to conclude that he can be held responsible for over one-thousand kilograms of marijuana trafficking. The trial judge denied his request for acquittal on Count One. When reviewing a district court's denial of a motion for acquittal, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Landham*, 251 F.3d 1072, 1083 (6th Cir. 2001). Appellant Gonzalez-Garcia claims that the district court incorrectly interpreted the statute governing this offense, and erred when concluding that the appellant could be held personally liable for that amount of marijuana. "Statutory interpretation is a question of law which this Court reviews *de novo*." *United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 338 (6th Cir. 2000); *United States v. Cassidy*, 899 F.2d 543, 545 (6th Cir. 1990); *In re Vause*, 886 F.2d 794, 798 (6th Cir. 1989).

The fifth and final issue involves the application of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to the case at bar. The Sixth Circuit has previously held that "*Apprendi* explicitly applies only in those situations where a factual determination made under a lesser standard of proof than the reasonable doubt standard 'increases the penalty for a crime beyond the statutory maximum.'" *United States v. Garcia*, 252 F.3d 838, 842 (6th Cir. 2001) (*quoting Apprendi*, 530 U.S. at 490).

Each of these issues will be addressed in turn.

## IV.  DISCUSSION

### A.  Preclusion of Out-of-Court Statements

Alvarez attempted to establish that Edward Perez owed money to other individuals.  This evidence was pursued in order to present the jury with the theory that Alvarez and Gonzales-Garcia were not the only people with a motive to kill Perez.  Alvarez's attorney tape recorded a conversation with a drug dealer from Texas named Geraldo Lucio.  However, at trial, Lucio invoked his Fifth Amendment right against self-incrimination in response to all questions about his involvement with Edward Perez.  Therefore, Alvarez attempted to enter the previously tape recorded statements into evidence under Federal Rule of Evidence 804(b)(3).  The district court ruled that these statements were not sufficiently against Lucio's penal interest and could not be admitted under Rule 804.  Alvarez appeals this finding by the district court.

This finding is reviewed for abuse of discretion.  *See United States v. Price*, 134 F.3d 340, 345 (6th Cir. 1998); *United States v. Hilliard*, 11 F.3d 618, 619 (6th Cir. 1994).  Rule 804(b)(3) allows a party to admit certain statements made by a witness unavailable to testify at trial, if those statements were against said witness' interest at the time they were made.  When the statement is offered "to exculpate the accused in a criminal case," Rule 804(b)(3) "imposes three threshold admissibility requirements: (1) the declarant is unavailable to testify; (2) the statement subjects the declarant to real criminal liability; and (3) corroborating circumstances clearly indicate the trustworthiness of the statement." *Hilliard*, 11 F.3d at 619 (citing Fed. R. Evid. 804(b)(3)); *United States v. Arthur*, 949 F.2d 211, 216 (6th Cir. 1991).

Alvarez's attorney, when meeting with Lucio, stated that "I will do everything I can to not hurt you" and that Alvarez and his attorney didn't "have any interest [in] getting you [Lucio] in trouble." Joint Appendix at p. 75-76.  The appellant's attorney went so far as to indicate that law enforcement personnel "can't just charge you [Lucio] with a crime", but that if they did, the prosecution would not "get very far if it's

Sixth Circuit] review[s][the] conclusions de novo.'" *Chowdhury*, 169 F.3d at 405 (quoting *United States v. Buckley*, 934 F.2d 84, 87-88 (6th Cir. 1991)); *United States v. Brown*, 915 F.2d 219, 223 (6th Cir. 1990).

Count Two of the indictment charged the appellants with a violation of 21 U.S.C. § 848(e)(1)(A), which is breached when a defendant "intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results." *Id*.  The court's "first step in construing a statute is to review the language of the statute itself." *United States v. Mills*, 140 F.3d 630, 633 (6th Cir. 1998) (citing *United States v. Ospina,* 18 F.3d 1332, 1335 (6th Cir. 1994)).  However, the "inquiry into legislative meaning is additionally aided by contemporaneous legislative history and the statutory context of the pertinent language." *United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 339 (6th Cir. 2000); *see also Walton v. Hammons*, 192 F.3d 590, 594 (6th Cir. 1999).

In the case at bar, the appellants argue that the intentional killing definition utilized in the jury instructions encompasses factors which are meant to be considered only in a death penalty case.  Although the elements in § 848(n)(1) are used as aggravating factors for a death penalty determination, the United States correctly argues that the death penalty cannot be imposed unless the defendant has been convicted of an action that amounts to an intentional killing under the statute.  The factors listed in § 848(n)(1) must support the state of mind required to uphold a conviction under this statute; otherwise, said factors would be inappropriately considered at the death penalty phase.

The legislative history appears to support this analysis. The congressional record indicates that congress intended the § 848(n)(1) provisions to be a recapitulation of the "elements of the offense." 134 Cong. Rec. S. 7489-91 (daily ed. June 9, 1988) statement of Sen. D'Amato.  The congressional discussion indicated that § 848(n)(1) "basically...reiterate[s] the element of the crime." *Id*.

the conspiracy which were "reasonably foreseeable to him and in furtherance of the execution of the jointly undertaken criminal activity." *Id*. at 1346.

As the appellant's proffered jury instruction was not a correct statement of the law, the trial judge's decision to exclude it from the final jury instructions presented at trial was not error.

## C.  Jury Instructions on Intentional Killing

The appellants both contend that the district court erred by presenting the juries with a definition of "intentional killing" that incorporated the mental states described in 21 U.S.C. § 848(n)(1).  The district court instructed the jury that "intentional killing" could be read to include "intentionally inflict[ing] serious bodily injury," "intentionally engag[ing] in conduct intending that the victim be killed or that lethal force be employed against the victim," and "intentionally engag[ing] in conduct which the defendant knew would create a grave risk of death to a person other than one of the participants in the offense and result[ing] in death to the victim." Joint Appendix at p. 441.

This court "reviews a jury charge in its totality to determine whether it fairly and adequately submits the issues and law to the jury." *United States v. Chowdhury*, 169 F.3d 402, 405 (6th Cir. 1999) (quoting *United States v. Milligan*, 17 F.3d 177, 182 (6th Cir. 1994)).  "A judgment may only be reversed if the instructions, viewed in their totality, were confusing, misleading or prejudicial." *Id*.

The question is "what a reasonable juror could have understood the charge as meaning." *California v. Brown*, 479 U.S. 538, 541, (1987); *United States v. Buckley*, 934 F.2d 84, 87 (6th Cir. 1991).  "Even if an instruction proves impermissible viewed in isolation, the reviewing court upholds the instruction if it takes on a permissible meaning in the context of surrounding instructions." *Brown*, 479 U.S. at 541.  "Where, in formulating instructions, the 'district court engages in statutory construction as a matter of law, . . . [the

just you [Lucio] saying, 'Yeah, you know, I, I was once involved in [a] marijuana deal.'" *Id*. at 76.  These statements were designed to put Lucio at ease and entice him into making a self-inculpatory statement that would benefit Alvarez.

In the case at bar, the circumstances indicate that the statements did not leave Lucio with the understanding that he was subjecting himself to "real criminal liability," thus bringing the "trustworthiness" of such statements into question. *Hilliard*, 11 F.3d at 619.  The basis of Rule 804(b)(3) is "founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." *Vincent v. Seabold*, 226 F.3d 681, 687 (6th Cir. 2000).  Therefore, if the statements were not truly self-inculpatory, in the sense that said statements did not subject Lucio to criminal liability, then the statements' reliability is called into question, thus supporting the district court's exclusion of such statements. The proper inquiry is "whether the statement was sufficiently against the declarant's penal interest 'that a reasonable person in the declarant's position would not have made the statement unless believing it to be true,' and this question can only be answered in light of all the surrounding circumstances." *Id.* (citations omitted).  Given the facts of the case at bar, the tape recorded statements were not admissible under Federal Rule of Evidence 804(b)(3), and the court upholds the district court's ruling excluding them.

## B.  Failure to Instruct the Jury as to Alvarez's Relevant Conduct

Appellant Alvarez contends that the district court erred by refusing to give an instruction regarding the concept of relevant conduct in a drug conspiracy case.  This ruling is reviewed for abuse of discretion. *Fisher v. Ford Motor Co.*, 224 F.3d 570, 575 (6th Cir. 2000).

Before Alvarez was tried, the government entered into a plea agreement with his alleged co-conspirator, Reynaldo

Rios.    Rios's plea agreement contained a non-binding stipulation that Rios should be held accountable for the illegal transportation and sale of between one hundred and four hundred kilograms of marijuana.  Alvarez wished to use this plea agreement as evidence that the conspiracy as a whole involved less than one thousand kilograms of marijuana, which was a required element to prove guilt under Count Two of the indictment against him.  *See* 21 U.S.C. § 848(e)(1)(A).

Alvarez proposed a jury instruction which educated the jury on federal sentencing principles for the purpose of determining whether the conspiracy involved the requisite amount of marijuana in order to support a guilty verdict.  The relevant part of the proposed instruction read as follows:

> Sentencing in federal drug conspiracy cases depends in large measure upon the quantity of drugs attributable to the defendant who is being sentenced.  And under the federal law that governs drug sentences, not every member of a conspiracy has to be held responsible for the entire amount of drugs distributed by the conspiracy.  But each defendant in a drug conspiracy case must be held accountable not only for the amount of drugs directly handled by him, but also for all quantities of drugs handled by co-conspirators if those quantities were known to the defendant or reasonably foreseeable to him.

Joint Appendix at p. 122.  The district court ruled that this proposed jury instruction was irrelevant and misleading, and refused to include it in the final jury instructions.  The trial judge noted that what the government believed Rios should be held accountable for was irrelevant in determining what the total scope of the conspiracy was.

Drug defendants may be sentenced and held accountable for an amount of contraband representing less than the complete scope of the conspiracy.  The district court indicated that *United States v. Arrendondo*, 178 F.3d 778 (6th Cir. 1999), supported this contention.  In that case, the court was called to determine whether Arrendondo should be held liable for less than one kilogram of heroin, or more than one kilogram

of heroin, despite the fact that "the entire conspiracy[,] during his period of participation," sold "roughly seven or eight kilograms" of heroin. *Id.* at 788.  The district court concluded that the proffered jury instruction was a misleading and incomplete statement of the law.

The Sixth Circuit reviews the instructions given by a district court to determine "'whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury.'"  *United States v. Buckley,* 934 F.2d 84, 87 (6th Cir. 1991) (quoting *United States v. Martin*, 740 F.2d 1352, 1361 (6th Cir. 1984)).  The court will reverse an appellant's conviction for failure to give a requested jury instruction only when: "(1) the requested instruction is a correct statement of the law; (2) the requested instruction is not substantially covered by other delivered instructions; and (3) the failure to give the instruction impairs the defendant's theory of the case." *United States v. Chesney,* 86 F.3d 564, 573 (6th Cir. 1996), (citing *United States v. Carr*, 5 F.3d 986, 992 (6th Cir. 1993)).

The appellant's proffered instruction that "each defendant in a drug conspiracy case must be held accountable not only for the amount of drugs directly handled by him, but also for all quantities of drugs handled by co-conspirators if those quantities were known to the defendant or reasonably foreseeable to him" is an incorrect and incomplete statement of the law.  Joint Appendix at p. 122.  Foreseeability alone is insufficient to hold a conspiracy defendant accountable for the actions of co-conspirators.  In *United States v. Jenkins*, 4 F.3d 1338 (6th Cir. 1993), this court held that "the scope of the criminal activity jointly undertaken by the defendant (the "jointly undertaken criminal activity") is *not necessarily the same as the scope of the entire conspiracy*, and hence relevant conduct is not necessarily the same for every participant." *Id.* at 1347.  Before determining the "defendant's accountability for the conduct of others under subsection (a)(1)(B)," the trial court must "first determine the scope of the criminal activity the particular defendant agreed to jointly undertake." *Id.* Therefore, each conspirator is responsible only for actions by