**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Roosevelt IVORY, Defendant–Appellant.**

No. 03–5447.

United States Court of Appeals, Sixth Circuit.

July 14, 2004.

---

\* Honorable Samuel H. Mays, Jr., United States District Judge for the Western District of Tennessee, sitting by designation.

Steve H. Cook, Asst. U.S. Attorney, Mary M. Aubrey, U.S. Attorney's Office, Knoxville, TN, Harry S. Mattice, Jr., U.S. Attorney's Office, Chattanooga, TN, for Plaintiff–Appellee.

Wade V. Davies, Ritchie, Fels & Dillard, Knoxville, TN, for Defendant–Appellant.

Before SILER and GIBBONS, Circuit Judges; and REEVES, District Judge.*

SILER, Circuit Judge.

Roosevelt Ivory appeals his conviction on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He raises various issues, including the constitutionality of his *Terry* stop. We affirm.

## BACKGROUND

Ivory was spotted at night by two police officers in a remote, high-crime courtyard of the Green Hills apartment complex in Knoxville, Tennessee. Fearing that Ivory was a "peeping Tom" or burglar, the officers decided to investigate and made their way to Ivory's location. By this time, Ivory had moved further down the building, away from the window, and was talking on his cellular telephone. After Ivory told the officers that he neither lived in the Green Hills Apartments nor knew anyone who lived there, they asked that Ivory turn around so that they could make sure that he was not armed and that he had not dropped anything on the ground around his location. When Ivory complied, one of the officers detected the outline of a gun along Ivory's waistband. He then frisked Ivory and discovered a loaded pistol.

Ivory was indicted and tried on one count of being a felon in possession of a

* The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

firearm. His defense was that the gun was not his, that it belonged to a person named "Tiko," and that Ivory had discovered the gun minutes earlier in the seat cushion of a couch in one of the apartments and had confiscated the weapon so as to prevent children from mishandling it. (Ivory testified that he had been in the apartment of a friend of a friend.) The jury was instructed on the defense of necessity, and Ivory was convicted.

Ivory asserts four alleged errors on appeal: (1) the district court's finding that the police's investigatory ("*Terry*") stop of Ivory was supported by reasonable suspicion, (2) an instruction to the jury that the interstate commerce element of the charged offense could be satisfied simply by showing that the gun at issue at some point crossed state lines, (3) a failure to instruct on the defense of temporary innocent possession, and (4) excusing Juror Tate after the jury had begun deliberations. We find these asserted errors to be without merit.

### STANDARD OF REVIEW

"[A]s a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal," *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), though "[h]aving said this, . . . a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* Ivory's Commerce Clause challenge amounts to a constitutional assault on 18 U.S.C. § 922(g)(1), and is therefore a question of law reviewed *de novo. United States v. Loney,* 331 F.3d 516, 524 (6th Cir.2003). "A district court's refusal to give a specifically requested jury instruction is reviewed for abuse of discretion,"

*United States v. Alvarez,* 266 F.3d 587, 591 (6th Cir.2001), as is a district court's decision to excuse a juror after deliberations have begun and its finding that the dismissed juror had not infected the jury by injecting prejudicial extraneous information. *See United States v. Ramos,* 861 F.2d 461, 466 (6th Cir.1988); *see also United States v. Davis,* 177 F.3d 552, 557 (6th Cir.1999).

### DISCUSSION

A. Whether Ivory's Seizure was Supported By Reasonable Suspicion

■ Determining whether Ivory's seizure was permissible requires a two-step analysis.

> First, [the court] determine[s] whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to a reasonable suspicion. Second, [the court] decide[s] whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances.

*United States v. Garza,* 10 F.3d 1241, 1245 (6th Cir.1993) (quotations and citations omitted).

On the first step of the analysis, Ivory's detention by the officers was appropriate. The officers had "specific and articulable facts" leading them to believe that Ivory "ha[d] been or [was] about to be involved in criminal activity." *Id.* (citing *United States v. Sokolow,* 490 U.S. 1, 12, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)).

As to the second step of the analysis, the scope of the intrusion into Ivory's personal

security was not improper. *Terry* itself made clear that

> where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the person[ ] with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled ... to conduct a carefully limited search of the outer clothing of such persons in an attempt to uncover weapons which might be used to assault him.

*Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The facts of *Terry* are very much akin to those here.

In the instant case, the totality of the circumstances indicates that the officers' seizure of Ivory was supported by reasonable suspicion. The detainment and frisk was therefore proper under *Terry.*

### B. The Commerce Clause Issue

Ivory's Commerce Clause challenge to the statute under which he was convicted fails because the argument Ivory advances in support of his challenge has recently been rejected by this court. *See United States v. Loney,* 331 F.3d 516, 524 (6th Cir.2003).

### C. The Court's Refusal to Instruct on the Defense of "Temporary Innocent Possession"

The court will reverse an appellant's conviction for failure to give a requested jury instruction only when: "(1) the requested instruction is a correct statement of the law; (2) the requested instruction is not substantially covered by other delivered instructions; and (3) the failure to give the instruction impairs the defendant's theory of the case." *United States v. Chesney,* 86 F.3d 564, 573 (6th Cir.1996) (citing *United States v. Carr,* 5 F.3d 986, 992 (6th Cir.1993)). *United States v. Alvarez,* 266 F.3d 587, 594 (6th Cir.2001).

■ Applying the criteria as set forth in *Alvarez,* the temporary innocent possession instruction requested by Ivory was a correct statement of the law. *See United States v. Wolak,* 923 F.2d 1193, 1198 (6th Cir.1991) (noting that the Sixth Circuit has recognized that such a defense exists, albeit only in "rare situations"). Nonetheless, because the district court instructed on the defense of necessity, the temporary innocent possession defense was substantially covered by another instruction. Also, the failure to give the temporary innocent possession instruction in no way impaired the defendant's theory of the case, which was that he had possessed the firearm to keep it out of the hands of children.

Instructing on necessity but not temporary innocent possession fairly and adequately submitted the issues and applicable law to the jury. It was not an abuse of discretion to decline to instruct on this rare defense, and if it was, any error was harmless. *See id.* (opining that "the trial judge would have been better advised to give an instruction on the innocent possession theory" but finding any error to be harmless).

### D. Dismissal of Juror Tate

Tate was excused from the jury after a note was sent to the judge indicating that he could not make a decision in the case because "the decision would complicate daily life environment due to personal conflict with parties involved" and that he wished to withdraw from the jury. The

record does not support the intimation, first articulated at the post-trial hearing, that Tate's excusal had anything to do with the merits of the case. This reason for excusal does not mesh with the reason given by Tate at trial, just after the note was written and under questioning by the trial court. Given the discrepancy between Tate's trial and post-trial hearing testimony, the district court cannot be faulted for crediting jury foreman Killough's account over Tate's. Moreover, even taking Tate's testimony at face value, Tate's familiarity with the case's location and players would seem to have not simply justified, but *required* his excusal. Given these obvious conflicts, we cannot conclude that the district court abused its discretion when it granted Tate's request—articulated through Killough's note—to be removed from the jury.

Nor did the district court abuse its discretion in finding that Tate did not relay any prejudicial extraneous information. The only thing he said to the other jurors as a group was that he had heard of Tiko. While it is true that Tate also told Killough privately that Tiko had been barred from the Green Hills apartments, Killough did not share this information with the rest of the jurors. Nor did he consider the information in weighing the evidence himself. Moreover, even if Killough *had* shared with other jurors the information about Tiko's being barred from the complex, it is unclear whether such information would help or hurt Ivory. Because it was Ivory's burden to show actual prejudice, *see United States v. Corrado,* 304 F.3d 593, 603 (6th Cir.2002), the district court did not abuse its discretion in declining Ivory's request for a new trial.

AFFIRMED.