**F I L E D**

PUBLISH

**August 9, 2005**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ZAHEER UL ISLAM,

      Defendant-Appellant.

No. 04-3320

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 03-CR-20077-06 JWL)**

Michael G. Christensen, Assistant United States Attorney (Eric F. Melgren, United States Attorney, with him on the brief), Kansas City, Kansas, for Plaintiff-Appellee.

Carl E. Cornwell (Jessica J. Travis, with him on the brief), Olathe, Kansas, for Defendant-Appellant.

Before **BRISCOE**, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.

**BALDOCK**, Circuit Judge.

A grand jury indicted Defendant Zaheer Ul Islam, a native of Pakistan, for marriage fraud in violation of 8 U.S.C. § 1325(c).[1]  Specifically, the grand jury charged Defendant with knowingly entering into a marriage with Angelle Charlene Herbert for the purpose of evading a provision of the immigration laws. A jury convicted Defendant.  The district court denied Defendant's motions for judgment of acquittal.  See Fed. R. Crim. P. 29.  The court concluded a rational juror could have found that Defendant entered into a sham marriage to evade the immigration laws.

Defendant appeals, arguing: (1) insufficient evidence exists to support his marriage fraud conviction; and (2) the district court erroneously instructed the jury on the elements of marriage fraud.  We have jurisdiction, 28 U.S.C. § 1291, and review the district court's denial of Defendant's motions for judgment of acquittal *de novo*.  See United States v. Williams, 376 F.3d 1048, 1051 (10th Cir. 2004).  In so doing, we take the evidence in the light most favorable to the Government to determine whether a reasonable jury could have found Defendant guilty of marriage fraud beyond a reasonable doubt.  See id.  We review the jury instructions for plain error because Defendant did not object to the instructions at trial.  See United States v. Fabiano, 169 F.3d 1299, 1302-03 (10th Cir. 1999).

_____

[1] The case involved indictments against several defendants for conspiracy to arrange marriages between Pakistani citizens and citizens of the United States.

2

Applying these standards, we affirm.

I.

The evidence at trial, viewed in a light most favorable to the Government, demonstrated the following: Crystal Mae Porter-Jamil arranged several marriages between American females and Pakistani males. The purpose of the marriages, according to Porter-Jamil, was to assist Pakistani men in obtaining permanent resident cards, commonly known as green cards. Porter-Jamil contacted Angelle Herbert and spoke to her about an arranged marriage in order to permit Defendant to obtain United States citizenship. Porter-Jamil explained to Herbert that while she would not have to live with Defendant, she would have to generate joint paperwork, such as credit applications and leases, to make their marriage convincing. Porter-Jamil informed Herbert that she would be paid roughly $500 up front, $60 a month, and $1000 at the end of the immigration proceedings if she married Defendant. Herbert agreed.

Defendant flew from New York to Kansas to meet with Herbert. Defendant and Herbert "got to know each other a little bit and . . . made arrangements to get married." Defendant married Herbert on June 15, 2001, only a couple of days after first meeting. Porter-Jamil witnessed the wedding and took pictures. The pictures were to be given to immigration officials in order to prove the couple married. After the wedding, Porter-Jamil received $500 and Defendant paid

3

Herbert roughly $1000.

On June 29, 2001, Citizen and Immigration Services (CIS) received the following forms from Defendant and Herbert: (1) a completed Form I-485, Application to Register Permanent Residence or Adjust Status for Zaheer Ul Islam; (2) Form G-325A, Biographic Information for Zaheer Ul Islam; and (3) Form I-130, Petition for Alien Relative from Angelle C. Herbert. Defendant's Form I-485 showed his immigration status and authorized stay in the United States was to expire on July 5, 2001. Defendant and Herbert also listed a mutual home address located in Lenexa, Kansas on the immigration forms. Several months later, immigration officials interviewed Defendant and Herbert. Defendant and Herbert were placed under oath. The couple verified they lived together in Lenexa. The Government introduced documentary evidence, however, showing Herbert had listed a Kansas City home address (not Lenexa) on several applications for food stamps. Herbert did not list Defendant as a member of her household and did not indicate Defendant provided her any type of financial support. Herbert eventually admitted she was not physically living in Lenexa at the time of the CIS interview, despite telling immigration officials otherwise.

Defendant introduced several documents in an attempt to demonstrate he and Herbert lived together as a married couple. The documents included a joint tax return Defendant filed with Herbert which listed a Lenexa, Kansas address.

Defendant also introduced joint bank account statements, a cellular telephone bill, automobile insurance bill, cable bill, and a copy of Herbert's social security card which listed her name officially as Angelle Charlene Islam. Herbert admitted, however, that most of these documents were generated after immigration officials contacted her on January 27, 2003, and informed her they were investigating her marriage to Defendant.

II.

Under the Immigration and Nationality Act (INA), an alien who marries a United States citizen may petition for permanent residency. See 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154(a)(1)(A)(i)-(ii), and 1186a(a)(1).[2] To obtain permanent residency, however, an alien must verify he entered into the marriage in good faith and not for the purpose of procuring his admission as an immigrant. Id. §§ 1154(c), 1186a(b)(1)(A)(i), (d)(1)(A)(i)(III). Concomitantly, the INA makes it unlawful for any individual to "knowingly enter[] into a marriage for the purpose of evading any provision of the immigration laws." 8 U.S.C. § 1325(c). To convict an alien of marriage fraud, the Government must prove: (1) the alien knowingly entered into a marriage; (2) the marriage was entered into for the

_____

[2] The INA only grants "conditional" permanent residence status to aliens married less than twenty-four months prior to filing a petition. See 8 U.S.C. § 1186a(a)(1). Within ninety days of the second anniversary of the conditional admission, the couple may jointly petition for removal of the condition. Id. § 1186a(c)(1)(A).

purpose of evading a provision of the immigration laws; and (3) the alien knew or had reason to know of the immigration laws. See id.; see also United States v. Chowdhury, 169 F.3d 402, 405-06 (6th Cir. 1999); United States v. Vickerage, 921 F.2d 143, 146 (8th Cir. 1990).[3] Under the third element, the Government must demonstrate the alien acted with knowledge that his conduct was unlawful. See Chowdhury, 169 F.3d at 407. The Government, however, is not required to prove the defendant knew of the specific immigration statute allegedly violated. See id. The Government may prove knowledge by reference to facts and circumstances giving rise to an inference that the defendant knew he was violating the law. See id.; Cf. Liparota v. United States, 471 U.S. 419, 434 (1985) (noting "as in any . . . criminal prosecution requiring *mens rea*, the Government may prove by reference to facts and circumstances surrounding the case that petitioner knew his conduct was unauthorized or illegal.").

In this case, a rational juror could easily find, based upon the evidence presented at trial, that Defendant entered into a marriage with Herbert for the purpose of evading the immigration laws. At trial, Porter-Jamil testified she

---

[3] Defendant argues the exclusive inquiry under the second element should be whether the couple "intended to establish a life together." Bark v. INS, 511 F.2d 1200, 1201 (9th Cir. 1975); Rodriguez v. INS, 204 F.3d 25, 27 (1st Cir. 2000). Such an inquiry, although not exclusive, may be relevant to the alien's "intent" in entering into a marriage. If proffered and admitted, the jury certainly may consider such evidence when determining whether a marriage was entered into *for the purpose of evading the immigration laws*.

recruited Herbert for a marriage and informed Herbert that she knew a man that needed to get married *so he could obtain legal residency*. Porter-Jamil also informed Herbert that she would be paid for her services. Prior to relocating to Kansas, the evidence shows Defendant knew of these plans and intended to enter into a fraudulent marriage. Porter-Jamil testified that Defendant called from New York to inquire as to when he should travel to Kansas. Defendant then flew from New York to Kansas to meet with Herbert. Defendant and Herbert were married only a couple of days thereafter notwithstanding the fact that Herbert was not "in love" with Defendant. Defendant paid Herbert roughly $1000 after their wedding. Further, Defendant's arranged marriage occurred just weeks prior to the expiration of his authorized stay as set forth in his immigration forms. A reasonable jury, based upon the foregoing, could infer Defendant married Herbert for the purpose of procuring his admission as an immigrant and thus to evade the immigration laws.[4]

---

[4] Defendant, relying upon Ninth Circuit precedent, argues an alien's motivation for a green card is insufficient to support a conviction for marriage fraud. See United States v. Orellana-Blanco, 294 F.3d 1143, 1151-52 (9th Cir. 2002) (noting a marriage is not a sham simply because an alien's "motivation for marriage was love for a green card rather than love [for the spouse]"); United States v. Tagalicud, 84 F.3d 1180, 1185 (9th Cir. 1996). We disagree. The plain language of § 1325(c) merely requires proof that an alien enter a marriage *for the purpose of evading the federal immigration laws*. 8 U.S.C. § 1325(c); Chowdhury, 169 F.3d at 406-07. If the evidence demonstrates an alien married *so he could obtain a green card*, and to bypass normal immigration requirements, the
(continued...)

A reasonable jury could also infer Defendant knew or had reason to know he was violating the immigration laws. The evidence demonstrates Defendant went out of his way to generate paperwork proving he and Herbert lived together as a married couple. Most of the paperwork, however, was not created until *after* immigration investigators spoke with Herbert about her marriage to Defendant. A reasonable jury could infer Defendant attempted to generate documents showing the couple shared a mutual address after the Government commenced its marriage fraud investigation. See Chowdhury, 169 F.3d at 407. Further, Defendant lied to immigration officials about residing with Herbert in Lenexa. Indeed, Herbert admitted at trial that she was not physically living in Lenexa with Defendant at the time the couple informed immigration officials otherwise during their CIS interview. Defendant's actions, at a minimum, raise a permissible inference that he was aware of the immigration laws and actively attempted to evade those laws. See id.

Based upon the foregoing, and viewing the evidence in the light most favorable to the Government, a reasonable jury could conclude Defendant entered into a marriage with Herbert for the purpose of evading the immigration laws in violation of § 1325(c).

---

[4](...continued)
jury certainly may infer he married *for the purpose* of evading the immigration laws in violation of § 1325(c).

8

III.

Defendant also argues the district court's jury instruction on "intent" under § 1325(c) constituted plain error. The jury instruction provided in relevant part:

> Defendant Zaheer Ul Islam . . . [is] charged with violating [8 U.S.C. § 1325(c)], which makes it a crime to knowingly enter into a marriage for the purpose of evading any provision of the immigration laws. . . . For you to find a defendant guilty of this crime, you must be convinced that the government has proved each of the following three (3) elements beyond a reasonable doubt:
>
> First: That the defendant knowingly entered into a marriage; and
>
> Second: That the marriage was entered into for the purpose of evading any provision of the immigration laws; and
>
> Third: That the defendant knew or had reason to know of the immigration laws.
>
> The government need not prove that the defendant knew the specific immigration law he was evading, but rather need show only that the defendant acted with knowledge that his conduct was unlawful.

Among other things, Defendant argues the instruction failed to convey to the jury that it must find Defendant, not his wife, had the "intent" to engage in marriage fraud. We acknowledge the instruction is somewhat ambiguous and would have been more clear had the court included the word "Defendant" under the second element as it did when describing the first and third elements. The court's instruction, however, clearly indicated in the last sentence that *Defendant* was the one who must evade the immigration laws, not his wife. Therefore, reading the instructions as a whole, no error (plain or otherwise) occurred. See United States

9

v. Lawrence, 405 F.3d 888, 896-97 (10th Cir. 2005).[5] The district court's denial

of Defendant's motions for judgment of acquittal is

AFFIRMED.

---

[5] Defendant also argues the district court erred in not instructing the jury that a sham marriage is "a marriage entered into without an intent to establish a life together." As previously stated, see supra at 6 n.3, evidence showing an "intent to establish a life together" is not the dispositive inquiry under § 1325(c). The district court properly instructed the jury on the elements of marriage fraud under § 1325(c), see Chowdhury, 169 F.3d at 406, and we are confident the jury was "fairly guided" as to the law. See Lawrence, 405 F.3d at 897.