**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 28, 2011

No. 09-50849

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDERMINDA ORTIZ-MENDEZ,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before SMITH, WIENER, and OWEN, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Ederminda Ortiz-Mendez appeals her conviction of marriage fraud and conspiracy to defraud the United States.  Finding no error, we affirm.

I.

Ortiz-Mendez is a foreign national residing in the United States who is married to Antonio Rosales, a U.S. citizen.  Rosales applied for an adjustment

No. 09-50849

of status for Ortiz-Mendez so she could obtain permanent resident status. An immigration adjudication officer interviewed Ortiz-Mendez and Rosales in connection with the application. The officer became suspicious of their answers, so she referred the case to Customs Enforcement Special Agents to investigate whether the couple entered into the marriage for the purpose of evading immigration laws (i.e., whether this was a "sham marriage" in which Ortiz-Mendez was marrying a U.S. citizen for the purpose of obtaining a green card).

Following the investigation, Ortiz-Mendez and Rosales were charged with marriage fraud and conspiracy to defraud the United States. Rosales pleaded guilty of marriage fraud. Ortiz-Mendez proceeded to trial, at which the government presented testimony from Rosales, who said that the marriage was a sham and that, in exchange for marrying her, he was promised a job with her boyfriend's company. Rosales testified that he and Ortiz-Mendez had never lived together as husband and wife, never slept in the same bed, and had never kissed, let alone have marital relations. Additional witnesses stated that the marriage was entered into for the purpose of evading immigration laws.

Ortiz-Mendez testified that she married Rosales because she loved him, not to evade immigration laws, and that she intended to stay with him for the rest of her life. She presented several witnesses in support of her defense.

Ortiz-Mendez objected to the proposed jury instructions and instead requested the following instruction:

> That an alien married a citizen so that he could get a green card did not make the marriage a sham, although it was evidence that might support an inference of a sham marriage. An intent to obtain something other than or in addition to love and companionship from that life does not make a marriage a sham, for purposes of immigration laws. Rather, the sham arises from the intent not to establish a life together. If one spouse intended the marriage to be a sham when the ceremony took place, but the other intended it to be genuine, then one committed marriage fraud but not the other.

2

No. 09-50849

The district court rejected the proposed instruction and instead issued, in relevant part, the following instruction on the marriage fraud count (and a substantially similar instruction for the relevant part of the conspiracy-to-commit-fraud count):

> Defendant is charged with knowingly entering into marriage for the purpose of evading the immigration laws.  For you to find Defendant guilty of this crime, you must be convinced that the government has proven each of these things beyond a reasonable doubt:
>
> FIRST: that Defendant knowingly married a person who is a United States citizen; and
>
> SECOND: that she knowingly entered into the marriage for the purpose of evading a provision of the United States immigration laws.

## II.

Ortiz-Mendez claims her instructions should have been given.  We review a challenge to jury instructions for abuse of discretion, "affording the trial court substantial latitude in describing the law to the jurors." *United States v. Orji-Nwosu*, 549 F.3d 1005, 1008 (5th Cir. 2008) (internal quotation marks and citation omitted).  We ask "whether the charge, as a whole, was a correct statement of the law and whether it clearly instructed the jurors as to the principles of the law applicable to the factual issues confronting them." *Id.* (internal quotation marks and citation omitted).  A court commits a reversible error in failing to give an instruction proposed by the defense where "(1) the requested instruction is substantially correct; (2) the requested issue is not substantially covered in the charge; and (3) the instruction concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a given defense." *United States v. John*, 309 F.3d 298, 304 (5th Cir. 2002) (internal quotation marks and citation omitted).

3

No. 09-50849

III.

To convict of marriage fraud, the government must prove beyond a reason-able doubt that the defendant knowingly entered into a marriage for the purpose of evading any provision of the immigration laws. *See* 8 U.S.C. § 1325(c). Ortiz-Mendez points to two reversible differences between the jury instructions given and her proposed instructions. First, she argues that her proposed instructions are necessary to inform the jury that just because Rosales pleaded guilty of mar-riage fraud does not mean she is also guilty of that offense.[1]

That contention is incorrect. The given instruction states that Ortiz-Mendez must have "*knowingly* entered into the marriage for the purpose of evad-ing a provision of the United States immigration laws." (Emphasis added.) The "knowledge" requirement in that instruction is essentially the same as the state-ment in Ortiz-Mendez's proposed instruction that one party can be innocent of marriage fraud even though the other is guilty. If the jury believed that Ortiz-Mendez was entering into a valid marriage even though Rosales was not, it would not have found that Ortiz-Mendez had knowingly entered the marriage for the purpose of evading immigration laws. Thus, although Ortiz-Mendez's proposed instruction on this issue is a correct statement of the law, the issue had already been substantially covered in the charge that was given.

IV.

The second issue raised by Ortiz-Mendez speaks to the core difference be-tween her proposed instruction and the instruction given: The proposed instruc-tion states that she can be convicted for marriage fraud only if the government

---

[1] The portion of Ortiz-Mendez's instruction that she claims would clarify this issue is the following: "If one spouse intended the marriage to be a sham when the ceremony took place, but the other intended it to be genuine, then one committed marriage fraud but not the other."

No. 09-50849

proves she did not intend to "establish a life together" with her spouse; the in-
struction that was given requires only that the government prove Ortiz-Mendez
entered into the marriage for the purpose of evading immigration laws.

Whether a defendant can be convicted of marriage fraud only if she did not
intend to establish a life with her spouse is a question our circuit has not an-
swered, but six others have directly addressed it. The Sixth, Seventh, and Tenth
Circuits have held that the government is not required to show that a defendant
lacked intent to establish a life with his spouse—and thus jury instructions sug-
gesting otherwise are contrary to law.[2] The First, Eighth, and Ninth Circuits,
on the other hand, have held that an individual cannot be convicted of marriage
fraud unless the government proves that he did not intend to establish a life
with his spouse—and thus jury instructions to that effect must be given.[3]

We join the Seventh and Tenth Circuits and reject Ortiz-Mendez's argu-
ment. She asks us to read into the statute an element that is absent. No aspect
of the statute requires the government to show that Ortiz-Mendez lacked an in-
tent to establish a life with Rosales; rather, the government need only show that
she entered into the marriage with the purpose of evading immigration laws.
That is the only intent-based aspect of the statute.

We do not suggest that one's intent to establish a life with his spouse is ir-
relevant. It is one factor, among many, that can be considered in determining
whether a marriage was entered into for the purpose of evading the immigration
laws. But it is not an element of the offense, and a jury instruction that so sug-

---

[2] *See United States v. Darif*, 446 F.3d 701, 709-10 (7th Cir. 2006); *United States v. Islam*, 418 F.3d 1125, 1128 n.3 (10th Cir. 2005); *United States v. Chowdhury*, 169 F.3d 402, 405-07 (6th Cir. 1999).

[3] *See United States v. Yang*, 603 F.3d 1024, 1026 (8th Cir. 2010); *Cho v. Gonzales*, 404 F.3d 96, 102-03 (1st Cir. 2005); *United States v. Orellana-Blanco*, 294 F.3d 1143, 1151 (9th Cir. 2002).

No. 09-50849

gests would be contrary to law.

The circuits that have come out the other way have not made a careful analysis of the statutory text. The Ninth Circuit, for example, explained that

> motivations are at most evidence of intent, and do not themselves make the marriages shams. Just as marriages for money, hardly a novelty, or marriages among princes and princesses for reasons of state may be genuine and not sham marriages, so may marriages for green cards be genuine. An intent to obtain something other than or in addition to love and companionship from that life does not make a marriage a sham. Rather, the sham arises from the intent not to establish a life together.

*Orellana-Blanco*, 294 F.3d at 1151 (internal quotation marks and citation omitted).

Perhaps the panel in *Orellana-Blanco* was right in its soliloquy on the meaning of marriage, and maybe it would be improper for us to describe Ortiz-Mendez's marriage to Rosales as a "sham" if she really did intend to establish a life with him. But the statue does not prohibit "sham marriages" as defined by the Ninth Circuit or even by our common understanding of the term. What it does do is explicitly prohibit marriages entered into for the purpose of evading the immigration laws. And that is what the jury instructions given in this case accurately, succinctly, and properly address.

AFFIRMED.

6