PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-4577

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

FATIH SONMEZ,

Defendant - Appellant.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Richard D. Bennett, District Judge.
(1:12-cr-00669-RDB-1)

Argued:  December 11, 2014          Decided:  February 2, 2015

Before NIEMEYER, SHEDD, and KEENAN, Circuit Judges.

Affirmed by published opinion.  Judge Keenan wrote the opinion,
in which Judge Niemeyer and Judge Shedd joined.

**ARGUED:** Hassan Minhaj Ahmad, HMA LAW FIRM, PLLC, Herndon,
Virginia, for Appellant.  Paul Michael Cunningham, OFFICE OF THE
UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.  **ON
BRIEF:** Rod J. Rosenstein, United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal of a conviction for marriage fraud, we consider whether the district court abused its discretion in instructing the jury on the elements of the crime under 8 U.S.C. § 1325(c), which prohibits entry into a marriage "for the purpose of evading any provision of the immigration laws." Fatih Sonmez was convicted by a jury for violating the marriage fraud statute and, on appeal, contends that the district court should have instructed the jury that the government was required to prove as elements of the offense that: (1) the sole reason he entered into the marriage was to obtain an immigration benefit; and (2) he had no intent to establish a life with his spouse.

Upon our review, we conclude that the district court did not abuse its discretion when it rejected Sonmez's proposed jury instructions and charged the jury by tracking the actual language of Section 1325(c). Therefore, we affirm the district court's judgment.

I.

Sonmez is a Turkish national who entered the United States legally in November 2000 on a tourist visa, which allowed him to stay in this country until May 2001. However, Sonmez remained in the United States beyond this authorized period.

In November 2008, Sonmez married Tina Eckloff, a United

2

States citizen.  With Eckloff's assistance, Sonmez filed an application for immigration benefits with the Baltimore, Maryland office of the United States Citizenship and Immigration Services (USCIS), seeking to obtain a "green card" granting him permanent residency as a result of his marriage to a United States citizen.[1]  In June 2010, USCIS issued Sonmez a Notice of Intent to Deny his application, on the basis that the agency suspected that the marriage was entered into for the purpose of evading the immigration laws.

Around the time that the USCIS issued the above notice, Homeland Security Investigations (HSI), a division of the United States Department of Homeland Security, was conducting an investigation into an alleged scheme concerning United States citizens marrying persons from the Middle East for the purpose

---

[1] Under the Immigration and Nationality Act, an alien who marries a United States citizen may petition for permanent residency.  See 8 U.S.C. §§ 1151(a), 1151(b)(2)(A)(i), 1154(a), 1186a; United States v. Islam, 418 F.3d 1125, 1128 (10th Cir. 2005) (discussing statutory scheme allowing an alien to obtain permanent residency status).  If the alien is granted lawful permanent resident status, the government issues the alien a Permanent Resident Card, commonly called a "green card."  See Lendo v. Gonzales, 493 F.3d 439, 442 (4th Cir. 2007); United States v. Ryan-Webster, 353 F.3d 353, 355 (4th Cir. 2003).  To curtail fraudulent marriages entered into by aliens to obtain permanent residency status, Congress enacted the Immigration Marriage Fraud Amendments of 1986, which, among other things, contains the criminal prohibition concerning fraudulent marriages that is at issue in this appeal.  See Pub. L. 99-639, § 2(d), 100 Stat. 3537 (1986); H.R. Rep. No. 99-906, at 1, 5-6 (1986).

of favorably changing their immigration status. The HSI investigation led to Tina Albrecht who admitted that, in exchange for financial compensation, she had married a Turkish national to aid him in obtaining a green card. Albrecht cooperated with the HSI investigation and identified other persons engaged in similar conduct, including her friend Eckloff whom Albrecht had introduced to Sonmez.

The HSI investigation culminated in an indictment alleging that Sonmez and Eckloff committed marriage fraud in violation of 8 U.S.C. § 1325(c).[2] Although Eckloff initially denied having married Sonmez for fraudulent purposes, she eventually admitted that she had married him in exchange for monetary compensation to enable him to obtain a green card. Eckloff later entered a guilty plea to the charge.

Under her plea agreement with the government, Eckloff testified at Sonmez's trial. According to Eckloff, Albrecht proposed an arrangement whereby Eckloff would marry Sonmez, who needed a green card, in exchange for Eckloff receiving an agreed amount of money. Albrecht introduced Eckloff to Sonmez at a restaurant, and the pair were married around two weeks later.

Eckloff testified that she married Sonmez because she "needed financial help with a lawyer." Eckloff stated that she

---

[2] By the time of the indictment, Sonmez and Eckloff had obtained a divorce.

4

received about $2,000 for entering into the marriage and for helping Sonmez in his efforts to obtain a green card. She explained that she signed documents for submission to USCIS for that purpose, and that the couple moved into the same residence after their USCIS interview "in case [government agents] came looking." Eckloff also testified that she did not have a sexual relationship with Sonmez, and that at the time of the marriage she had no romantic feelings for Sonmez because she "didn't know him."

Sonmez testified in his defense and presented a vastly different story concerning the nature of his relationship with Eckloff. In contrast to Eckloff's testimony that they were married less than two weeks after meeting, Sonmez stated that he and Eckloff began dating in April 2008, more than six months before their marriage in November 2008. Sonmez indicated that he saw Eckloff at least twice per week during the spring and summer of 2008. According to Sonmez, he and Eckloff began a sexual relationship, ultimately lived together during this period, and frequently discussed getting married. Sonmez further stated that after getting married, he and Eckloff attempted to have a child together, and that the marriage was "real" for him. He denied paying Eckloff any money to enter into the marriage.

At the close of trial, the parties disputed the content of

5

certain proposed jury instructions. As relevant to this appeal, Sonmez proposed three instructions addressing the elements required for a conviction under Section 1325(c). Sonmez's first proposed instruction stated that the government was required to prove four elements:

> First, that [the] defendant knowingly entered into a marriage with a US citizen,
>
> Second, that the only reason the marriage was entered into was to obtain an immigration benefit,
>
> Third, that the defendant and his US citizen spouse had no intent to establish a life together[,] [and]
>
> Fourth, that [the] defendant knew the said purpose for the marriage and knew or had reason to know that his conduct was unlawful.

(Emphasis added.) Sonmez also sought an instruction expounding on the second element of his proposed test, to have the court instruct the jury that "[i]f you find there was any reason the defendant entered into the marriage besides obtaining an immigration benefit, you must find the defendant not guilty." Similarly, Sonmez proposed an additional instruction explaining the third element of his proposed test, to have the court instruct the jury that "[i]f you find that defendant and his US citizen spouse did intend to establish a life together, you must find the defendant not guilty."

The district court rejected Sonmez's proposed instructions and charged the jury on the elements of the offense as follows:

> First, that the defendant acted knowingly[,] [t]hat

6

the defendant . . . knowingly entered into a marriage with a United States citizen.

Second, that the marriage was entered into for the purpose of evading a provision of the United States immigration laws.

And third, that the defendant knew of said purpose of the marriage[,] [a]nd had reason to know that his conduct was unlawful.

(Emphasis added.) The district court allowed Sonmez to argue to the jury that he intended to establish a life with Eckloff and, thus, that his purpose in entering the marriage lacked any intent to evade the immigration laws.

The jury returned a verdict finding Sonmez guilty of violating Section 1325(c). The district court imposed a prison sentence limited to the amount of time Sonmez already had served, as well as a one-year term of supervised release and a fine of $4,000. Sonmez timely filed this appeal.

## II.

Sonmez's arguments on appeal pertain solely to the district court's failure to give his proposed jury instructions addressing the elements of the offense under Section 1325(c).[3]

---

[3] Before trial, Sonmez filed a motion to dismiss the indictment, arguing among other things that Section 1325(c) is unconstitutionally vague. In that motion, Sonmez raised several issues similar to those presented in this appeal concerning the statutory language and the degree to which the defendant's intent to establish a life with his spouse affects his criminal liability under Section 1325(c). The district court denied the
(Continued)

7

The statute, titled "Marriage fraud," provides that:

> Any individual who knowingly enters into a marriage for the purpose of evading any provision of the immigration laws shall be imprisoned for not more than 5 years, or fined not more than $250,000, or both.

8 U.S.C. § 1325(c).

Sonmez contends that the jury should have been instructed that he could not be convicted unless the jury found that his "sole" purpose in entering into the marriage was to evade the immigration laws. He maintains that the common meaning of the statutory phrase "the purpose" connotes a single purpose and does not encompass multiple purposes. Sonmez also contends that the jury should have been instructed that the government was required to prove that he had no intent to establish a life with Eckloff, and asserts that the majority of courts addressing this issue have stated that such intent is an important factor in determining whether an individual has violated Section 1325(c). We disagree with Sonmez's arguments.

We review for abuse of discretion the district court's denial of Sonmez's proposed jury instructions. United States v. Bartko, 728 F.3d 327, 343 (4th Cir. 2013). To establish an abuse of discretion in this regard, a defendant must demonstrate that his proposed instructions (1) were "correct," (2) were "not

motion, and Sonmez does not challenge that ruling on appeal.

8

substantially covered by the charge that the district court actually gave to the jury," and (3) "involved some point so important that the failure to give the instruction[s] seriously impaired the defendant's defense." Id.; see also United States v. McFadden, 753 F.3d 432, 443-44 (4th Cir. 2014) (same).

We first address the district court's decision declining to instruct the jury that the government had to prove that the "only reason the marriage was entered into was to obtain an immigration benefit." (Emphasis added.) We conclude that the district court properly refused to give this instruction because it is not a correct statement of law.

As stated above, the marriage fraud statute applies to any individual who knowingly enters into a marriage "for the purpose of evading any provision of the immigration laws." 8 U.S.C. § 1325(c). The instructions sought by Sonmez effectively would have added the word "sole" to the statute, creating a different element of the crime, which would have prohibited entry into a marriage "for the [sole] purpose of evading any provision of the immigration laws." We will not construe the statute in such a manner, because we are required to interpret statutory language as written and are not permitted to add words of our own choosing. See Ignacio v. United States, 674 F.3d 252, 255 (4th Cir. 2012).

We observe that the great majority of our sister circuits

9

that have considered the language of Section 1325(c) have set forth the elements of that offense in accord with the district court's instructions to the jury in this case.[4]  In fact, the Sixth Circuit, in United States v. Chowdhury, 169 F.3d 402 (6th Cir. 1999), expressly rejected the argument advanced by Sonmez here.  The Sixth Circuit held that the trial court properly refused to impose on the government the burden of proving that the defendant's "sole" purpose was to evade the immigration laws, because "nothing in the statute require[d] the additional language proposed by the defendant."  Id. at 407.  The Sixth

---

[4] See United States v. Yang, 603 F.3d 1024, 1026 (8th Cir. 2010) (affirming conviction in which the district court gave substantively identical jury instructions as those given at Sonmez's trial concerning the elements of marriage fraud under Section 1325(c)); United States v. Darif, 446 F.3d 701, 709-10 (7th Cir. 2006) (affirming conviction and expressly approving jury instruction concerning the elements of Section 1325(c) that was substantively identical to the instruction given at Sonmez's trial); United States v. Islam, 418 F.3d 1125, 1129-30 (10th Cir. 2005) (same); United States v. Chowdhury, 169 F.3d 402, 406-07 (6th Cir. 1999) (same); see also United States v. Rojas, 718 F.3d 1317, 1320 (11th Cir. 2013) (stating that the elements of the offense under Section 1325(c) require the government to prove that (1) the defendant knowingly entered into a marriage (2) for the purpose of evading the immigration laws); United States v. Ortiz-Mendez, 634 F.3d 837, 839 (5th Cir. 2011) (stating that the elements of Section 1325(c) require the government to prove "that the defendant knowingly entered into a marriage for the purpose of evading any provision of the immigration laws").  But see United States v. Orellana-Blanco, 294 F.3d 1143, 1151 (9th Cir. 2002) (requiring as an element of the offense that the government prove that the defendant had no intent to establish a life with his spouse at the time of the marriage) (citing United States v. Tagalicud, 84 F.3d 1180, 1185 (9th Cir. 1996)).

Circuit explained that the instruction given by the trial court, requiring the government to prove that the defendant "entered into the marriage for the purpose of evading the United States immigration laws," was proper because the instruction "track[ed] the language of the statute." Id. at 406-07.

We also observe that Sonmez's "sole purpose" argument is not supported by any decisions of our sister circuits. We decline his request that we issue the first such decision interpreting the statute contrary to its plain language. Accordingly, we hold that the district court did not abuse its discretion in rejecting Sonmez's request for an instruction that would have required the government to show that the sole reason he entered into the marriage was to obtain an immigration benefit.

For similar reasons, we conclude that the district court did not abuse its discretion in refusing to instruct the jury that the government had the burden of proving that Sonmez did not "intend to establish a life" with Eckloff. Like Sonmez's "sole purpose" instruction, this instruction was properly refused because it is an incorrect statement of law. See McFadden, 753 F.3d at 443-44. As noted by some of our sister circuits, the text of Section 1325(c) does not provide any support for such a requirement. See United States v. Ortiz-Mendez, 634 F.3d 837, 840 (5th Cir. 2011) (rejecting similar

11

argument and noting that the defendant "asks us to read into the statute an element [of the statute] that is absent"); see also United States v. Darif, 446 F.3d 701, 709-10 (7th Cir. 2006) (rejecting proposed "intent to establish a life" jury instruction as "not supported by the language of [Section 1325(c)] defining the marriage fraud offense"); United States v. Islam, 418 F.3d 1125, 1128-30 (10th Cir. 2005) (holding that the district court correctly declined to instruct the jury that the government was required to prove as an element of the offense that the defendant did not intend to establish a life with his wife). In the absence of such a statutory requirement, Sonmez's proposed instruction would have changed the elements of the offense for which he was being tried.

We are not persuaded by the Ninth Circuit's contrary decisions requiring the government to prove under Section 1325(c) that the defendant lacked any intent to establish a life with his spouse. In United States v. Tagalicud, 84 F.3d 1180 (9th Cir. 1996), and United States v. Orellana-Blanco, 294 F.3d 1143 (9th Cir. 2002), the Ninth Circuit held that a marriage is a "sham" in violation of Section 1325(c) "'if the bride and groom did not intend to establish a life together at the time they were married.'" Tagalicud, 84 F.3d at 1185 (quoting Bark v. INS, 511 F.2d 1200, 1201 (9th Cir. 1975)); see also Orellana-Blanco, 294 F.3d at 1151 (citing Tagalicud and Bark for the same

12

proposition, and stating that "the sham arises from the intent not 'to establish a life together'") (quoting Bark, 511 F.2d at 1201).

These decisions do not rely on the text of Section 1325(c), but impose a requirement completely apart from the statutory language. See Ortiz-Mendez, 634 F.3d at 840 (observing that the Ninth Circuit's decision in Orellana-Blanco fails to "ma[k]e a careful analysis of the statutory text"). Notably, those Ninth Circuit decisions borrow the concept of "no intent to establish a life" from Bark, a civil immigration case defining a "sham" marriage, see 511 F.2d at 1201-02, even though Section 1325(c) does not use that term in its text. Thus, we find more persuasive the decisions reached by our other sister circuits tracking the statutory language.[5] See Ortiz-Mendez, 634 F.3d at 840; Darif, 446 F.3d at 709-10; Islam, 418 F.3d at 1128-30.

In reaching this conclusion, we nevertheless recognize that

---

[5] Similarly, we are not persuaded by Sonmez's reliance on certain civil cases discussing marriage fraud, which arise outside the context of a criminal prosecution under Section 1325(c). See Malik v. Att'y Gen. of U.S., 659 F.3d 253, 258 (3d Cir. 2011) (discussing standard for establishing whether an alien committed marriage fraud for purposes of the deportation provision of 8 U.S.C. § 1227(a)(1)(G)(i)); Monter v. Gonzalez, 430 F.3d 546, 558 (2d Cir. 2005) (discussing materiality of misrepresentation made by alien concerning the separation from his wife under removability provisions of the Immigration and Nationality Act); Cho v. Gonzalez, 404 F.3d 96, 102 (1st Cir. 2005) (discussing standard concerning whether alien "married in good faith" for purposes of obtaining permanent resident status under 8 U.S.C. § 1186a).

13

the intent to establish a life with one's spouse is a relevant consideration in determining whether a defendant's purpose in entering into a marriage was to evade the immigration laws. Therefore, defendants charged with violating Section 1325(c) are free to present evidence at trial that they entered into the marriage at issue for the purpose of establishing a life with their spouse. However, the relevance of this concept does not transform that consideration into an element of the offense, as Sonmez's proposed jury instructions would have done. See Ortiz-Mendez, 634 F.3d at 840 (noting that the defendant's intent to establish a life with his spouse "is one factor, among many, that can be considered in determining whether a marriage was entered into for the purpose of evading the immigration laws," but that such intent to "establish a life" is not an element of the offense under Section 1325(c)); Islam, 418 F.3d at 1128 n.3, 1130 n.5 (stating that whether the couple intended to establish a life together "may be relevant to the alien's 'intent' in entering into a marriage," but rejecting the argument that the inquiry is itself an element of the offense).

In the present case, the district court did not preclude Sonmez from developing evidence concerning his intent to establish a life with Eckloff, and Sonmez's counsel in fact relied on such testimony given by Sonmez in making closing argument to the jury. Thus, the district court provided Sonmez

14

ample opportunity to present the defense that, in marrying Eckloff, he simply intended to establish a life with her and did not have the purpose of evading the immigration laws. Accordingly, we hold that the district court did not abuse its discretion in declining to instruct the jury that the government had the burden of proving that Sonmez lacked any intent to establish a life with Eckloff.[6]

## III.

In conclusion, we hold that because Sonmez's proposed jury instructions are not correct statements of law, the district court did not abuse its discretion in declining to give those instructions to the jury. We affirm the district court's judgment.

AFFIRMED

---

[6] We also reject Sonmez's argument that application of the "rule of lenity" required that the district court instruct the jury in accordance with his proposed instructions. The rule of lenity is implicated only in the rare instance, not present here, in which there is a "grievous ambiguity or uncertainty" in the statute under consideration. Muscarello v. United States, 524 U.S. 125, 138-39 (1998) (citation and internal quotation marks omitted); see also United States v. Bridges, 741 F.3d 464, 470 (4th Cir. 2014) (same).

15