<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-4381**

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

     v.

WENJING LIU, a/k/a Linda Liu,

                Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge. (1:14-cr-00372-CMH-1)

Argued: May 11, 2016            Decided: June 21, 2016

Before TRAXLER, Chief Judge, and NIEMEYER and KEENAN, Circuit Judges.

Affirmed by unpublished opinion. Judge Keenan wrote the opinion, in which Chief Judge Traxler and Judge Niemeyer joined.

**ARGUED:** Patrick L. Bryant, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Christopher John Catizone, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Geremy C. Kamens, Acting Federal Public Defender, Frances H. Pratt, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Dana J. Boente, United States Attorney, Rebeca H. Bellows, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria,

Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

Wenjing "Linda" Liu was convicted by a jury of attempted international parental kidnapping in violation of the International Parental Kidnapping Crime Act (IPKCA), 18 U.S.C. § 1204. On appeal, Liu contends that the district court erred: (1) in excluding certain witnesses' testimony concerning Liu's statements about her travel plans; and (2) by denying two requested jury instructions.

Upon our review, we are unable to consider the merits of the court's exclusion of Liu's statements to the various witnesses, because Liu failed to proffer the content of the excluded testimony. Additionally, we hold that Liu's mother's statements regarding her travel plans were inadmissible hearsay, and that the district court's jury instructions substantially covered the content of the rejected instructions. Therefore, we affirm the district court's judgment.

I.

The relevant facts are largely undisputed. Liu was born in Tianjin, China, and she moved to the United States around 2000. In 2007, Liu married William Jerome Ruifrok III, a United States citizen, in Loudoun County, Virginia. Ruifrok and Liu have a son, WLR, who was born in 2010 in Tianjin, China. WLR traveled between China and the United States several times between 2010

3

and 2014, and occasionally remained in China for months at a time under the care of Liu's mother.

When the marriage between Liu and Ruifrok deteriorated, the couple separated in November 2013. After several months of negotiation about custody arrangements for WLR, Liu and Ruifrok reached an agreement, which was memorialized in a "Final Custody Order" entered in May 2014 by the Juvenile and Domestic Relations District Court of Loudoun County, Virginia. The Final Custody Order granted Liu primary physical custody and granted Ruifrok visitation rights every weekend. The Final Custody Order also required that either parent traveling with WLR outside the United States obtain "the express written and notarized consent of the other party, provided in advance [of] the trip."

Soon after the Final Custody Order was entered in May 2014, Liu and Ruifrok had various disagreements regarding Ruifrok's visitation with WLR. Ultimately, Liu stopped responding to Ruifrok's requests in July 2014, and Ruifrok was unable to exercise his visitation rights in July or August 2014.

On August 28, 2014, Liu purchased tickets from United Airlines (United) for Liu, Liu's mother, and WLR to travel from Washington Dulles International Airport (Dulles) to Beijing, China. They were scheduled to depart one week later, on September 4, 2014 at 12:20 p.m. Liu purchased a "round-trip"

4

ticket for herself and "one-way" tickets for WLR and Liu's mother.

Liu did not notify Ruifrok about her travel plans with WLR until after arriving at Dulles on the morning of the scheduled flight. At 11:00 a.m. on September 4, 2014, Liu informed Ruifrok by email that she had learned "last midnight" that her grandmother was dying and, therefore, she and WLR needed to travel to China as soon as possible. Two minutes later, Ruifrok responded via email, "[WLR] is not going, u cant take him to school[.] I will pick him up." An hour after Ruifrok responded, and 20 minutes before the plane departed, Liu replied:

> I already booked the tickets for him. We have to leave today. It's too urgent! I'll notice you when I know when we can be back. Because I have to replace his birth certificate too.

Ruifrok notified the Dulles airport police that Liu was violating a court order by leaving the country with WLR. The airport police contacted the Federal Bureau of Investigation (FBI) and the Loudoun County prosecutor, obtained a copy of the Final Custody Order, and confirmed that Liu and WLR were on the flight that had departed to Beijing.

After being notified of the situation, United personnel ordered the airplane's pilot to redirect the plane, which at that time was over Canadian airspace, back to Dulles. About

5

5:15 p.m., the flight landed at Dulles, where Liu, WLR, and Liu's mother were escorted off the aircraft. The FBI arrested Liu as she disembarked. At the time of her arrest, Liu's luggage contained a copy of the Final Custody Order, as well as WLR's passport that bore a Chinese visa issued on August 27, 2014.

A federal grand jury in the Eastern District of Virginia indicted Liu on one count of attempted international parental kidnapping, in violation of 18 U.S.C. § 1204. The IPKCA prohibits, in relevant part, any attempt to "remove[] a child from the United States . . . with intent to obstruct the lawful exercise of parental rights." 18 U.S.C. § 1204(a).

At trial, the government argued that Liu intentionally violated the Final Custody Order with the purpose of obstructing Ruifrok's parental rights. Liu presented evidence that she intended the trip to China to be a temporary visit, that the purpose of the trip was unrelated to Ruifrok's parental rights, and that she did not understand her obligations under the Final Custody Order.

Liu also attempted to elicit testimony from friends and associates about the reasons she gave them for making the trip. When Liu's counsel asked Janet Outtrim, Liu's housemate, about Liu's travel plans, the government objected on the ground that the statements were inadmissible hearsay. Liu's counsel

6

responded that these statements were admissible under the "state of mind" exception to the hearsay rule, but failed to proffer the substance of the testimony sought to be admitted. The district court ruled that Outtrim could testify about Liu's actions but "not the reasoning behind [them]." In response, Liu's counsel pursued a different line of questioning that permitted Outtrim to testify that Liu had not made any effort to keep her travel plans a secret, and that she had left most of her personal property and WLR's clothes at Outtrim's home.

Liu's counsel also asked Danica Hu, Liu's real estate agent, about Liu's expressed intent to buy a home and to enroll WLR in a school in northern Virginia. After the government objected to this question, Liu's counsel rephrased the inquiry, eliciting testimony that Hu continued to assist Liu through September 4, 2014, to help Liu find a home near "a good school for the child." However, Liu's counsel did not proffer to the court the substance of the testimony excluded by the court's ruling.

Ying Zhao, Liu's work colleague, also testified. After the district court sustained the government's objection to any statements Liu made to Zhao about her travel plans, Zhao testified that Liu had purchased a ticket to a business seminar to be held in Virginia on September 27, 2014, and that Liu's job functions could not be performed from China. Again, Liu's

7

counsel did not proffer for the record the content of the excluded testimony.

Liu also attempted to elicit testimony from FBI Special Agent Tonya Sturgill, who spoke to Liu's mother after the airplane returned to Dulles. At that time, Liu's mother purportedly stated that she had intended to return to the United States with WLR within a few months. The district court ruled that this statement was inadmissible hearsay.

In her proposed jury instructions submitted before trial, Liu asked the court to clarify for the jury that the government was required to prove that she "intended to obstruct Ruifrok's lawful exercise of his visitation rights with WLR, not merely that [she] intended to travel internationally with WLR without William Ruifrok's consent." At the close of evidence, Liu accordingly requested an instruction stating that the government must prove that Liu's "specific purpose" or a "significant" motivation for Liu's actions was an intent to obstruct Ruifrok's "exercise of physical custody." In response, the government agreed that more than a de minimis showing of intent was required, but argued that inserting a "significant purpose" element of proof would overstate the statutory requirement.

The district court rejected Liu's proposed jury instructions. As relevant to this appeal, the court instructed the jury that the government was required to prove: (1) that Liu

8

knowingly attempted to remove her child from the United States; and (2) that she did so "with the intent to obstruct the lawful exercise of parental rights." With respect to the first element, the district court explained that the term "knowingly" meant that Liu was "aware of her actions, realized what she was doing, and did not act because of ignorance, mistake, or accident." Regarding the second element, the district court instructed that "parental rights" were rights to physical custody of the child, which "includes visitation rights." Finally, the district court instructed the jury that the government was required to prove "that the defendant acted with the intent to obstruct the lawful exercise of parental rights," and that she "acted deliberately with the purpose of interfering with parental rights of the other parent."

During its deliberations, the jury submitted a question to the court, asking whether the government was required to prove that the defendant "knowingly . . . broke the law." The district court responded by reading again the language of the statute and the court's previous definition of the term "knowingly," and added that Liu did not have to know that "her actions may be in violation of a criminal law or that she intended to violate a criminal law." After ten minutes of additional deliberation, the jury returned a verdict of guilty.

9

The district court sentenced Liu to serve a term of six months' imprisonment and a one-year term of supervised release. Liu filed a motion for a new trial, which the court denied. Liu later filed this timely appeal.

II.

A.

Liu first contends that the district court abused its discretion in excluding testimony from the various witnesses concerning statements she made about her travel plans. Liu argues that her statements to these witnesses were admissible under the state of mind hearsay exception in Rule 803(3) of the Federal Rules of Evidence. Similarly, Liu argues that her mother's statements to FBI agents after disembarking from the plane at Dulles were admissible under the same hearsay exception as probative evidence of the mother's intent.

We review a district court's evidentiary rulings for abuse of discretion. United States v. McLean, 715 F.3d 129, 143 (4th Cir. 2013). Generally, the rule against admission of hearsay prohibits a witness from testifying about statements made by another when those statements are offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c), 802. An exception to this general rule permits admission of a statement of a declarant's then-existing state of mind for such purposes as showing her motive, intent, or plan. Fed. R. Evid. 803(3); see

10

also <u>Mut. Life Ins. Co. of N.Y. v. Hillmon</u>, 145 U.S. 285, 296 (1892).

The determination whether a statement qualifies for admission under the state of mind exception involves a fact-sensitive inquiry. <u>United States v. Rivera-Hernandez</u>, 497 F.3d 71, 81 (1st Cir. 2007). Forward-looking statements of intent are admissible, but backward-looking statements of memory are not. Fed. R. Evid. 803(3); <u>Shepard v. United States</u>, 290 U.S. 96, 105–06 (1933). For this reason, statements describing a declarant's then-existing state of mind are admissible, but statements about the declarant's reasons for having that state of mind are inadmissible.[1] 4 Stephen A. Saltzburg et al., <u>Federal Rules of Evidence Manual</u> § 803.02[4][b] (11th ed. 2015). The state of mind described also must be shown to have been contemporaneous with the statement. See <u>United States v. Hayat</u>, 710 F.3d 875, 895–96 (9th Cir. 2013) (describing circumstances

---

[1] In addition, statements admissible for one purpose, but not for another, must be scrutinized for probative value and risk of prejudice under Rule 403 of the Federal Rules of Evidence. Consistent with this requirement, some courts analyzing a statement under Rule 803(3) have inquired whether the declarant had the motivation or opportunity to misrepresent the relevant state of mind, such as when a criminal defendant, knowing that he is under investigation, gives a non-spontaneous, self-serving statement about his own state of mind. See <u>Wagner v. County of Maricopa</u>, 747 F.3d 1048, 1052–53 (9th Cir. 2013); <u>United States v. LeMaster</u>, 54 F.3d 1224, 1231 (6th Cir. 1995); <u>United States v. Neely</u>, 980 F.2d 1074, 1083 (7th Cir. 1992).

in which a description of past intent could also be understood as communicating present intent).

Given the "fact-sensitive" inquiry necessary for application of the state of mind exception, Rivera-Hernandez, 497 F.3d at 81, it is paramount that the proponent inform the court in an offer of proof the substance of the evidence sought to be admitted, unless that substance is apparent from the context of the request. Fed. R. Evid. 103(a)(2). The purpose behind this requirement is twofold. First, an offer of proof informs the trial court of the content of the evidence and of its relevance to the case, which enables the court to make an informed evidentiary ruling. See, e.g., Henry v. Wyeth Pharms., Inc., 616 F.3d 134, 151–52 (2d Cir. 2010); Perkins v. Silver Mountain Sports Club & Spa, LLC, 557 F.3d 1141, 1147 (10th Cir. 2009); Polack v. Comm'r of Internal Revenue, 366 F.3d 608, 612 (8th Cir. 2004). Second, the offer of proof permits the appellate court to evaluate whether the exclusion of evidence affected the substantial rights of the party seeking its admission. See, e.g., Perkins, 557 F.3d at 1147; Polack, 366 F.3d at 612.

In the present case, Liu failed to proffer the specific statements that she sought to introduce into evidence, and the context in which the statements arose did not render apparent the substance of the excluded evidence. Without offers of proof

12

concerning the excluded testimony, the record does not provide sufficient detail to determine whether Liu's statements to Outtrim, Hu, and Zhao were admissible under the state of mind exception. Liu did not proffer details about the substance of the excluded statements, or about the times or contexts in which the statements at issue were made. Therefore, we are unable to determine whether the statements described Liu's "then-existing" state of mind. See Fed. R. Evid. 803(3). Nor are we able to determine whether the statements were cumulative or unfairly prejudicial, or whether an expressed intent to return WLR to the United States at an indefinite time had probative value with respect to the critical issue of Liu's intent to obstruct Ruifrok's parental rights. See Fed. R. Evid. 403. Accordingly, in the absence of the necessary proffers, we cannot determine whether the district court abused its discretion in excluding Liu's statements regarding her intent and the purpose of her international travel.

Next, we disagree with Liu's contention that the district court should have admitted her mother's statements about their travel plans. After Liu was arrested, FBI Special Agent Tonya Sturgill questioned Liu's mother, who explained that she intended to return to the United States with WLR "in just a few months." Although proffered to the district court, the mother's statements were inadmissible because they were statements about

13

past intent or memories. Rule 803(3) explicitly excludes hearsay statements about memories offered "to prove the fact remembered." Fed. R. Evid. 803(3); Shepard, 290 U.S. at 105–06. Liu's mother's statements were made after the aircraft returned to Dulles and after Liu was arrested. Any statements about Liu's mother's travel plans would have described her state of mind hours or days earlier, rather than a "then-existing" state of mind. See Fed. R. Evid. 803(3). Accordingly, we conclude that the district court did not abuse its discretion by excluding from evidence Liu's mother's statements.

B.

Liu also challenges the district court's decision refusing two of her proposed jury instructions. We review the adequacy of the court's jury instructions for abuse of discretion. United States v. Sonmez, 777 F.3d 684, 688 (4th Cir. 2015). In order to establish that a district court abused its discretion in rejecting proposed jury instructions, a defendant "must demonstrate that her proposed instructions (1) were correct, (2) were not substantially covered by the charge that the district court actually gave to the jury, and (3) involved some point so important that the failure to give the instructions seriously impaired the defendant's defense." Id. (internal quotation marks and brackets omitted).

14

According to Liu, the district court should have given the jury a separate explanation that the "parental rights" Liu was accused of obstructing included only physical custody rights, and did not include Liu's failure to obtain Ruifrok's consent to travel with WLR to China. Liu also argues that under the IPKCA, the obstruction of parental rights must have been the "principal, but-for, or driving reason" for her actions, and that the district court should have instructed the jury to this effect.

1.

We first address Liu's argument that the district court abused its discretion by declining to give her preferred instruction regarding the IPKCA's definition of "parental rights."[2]   See 18 U.S.C. § 1204(b)(2).   The term "parental rights" is defined in the statute as meaning "the right to physical custody of the child," including "visiting rights," and

---

[2] We disagree with the government's contention that Liu failed to preserve this issue for appeal.  Liu proposed a jury instruction defining "parental rights," which the parties debated during the charge conference, explicitly referencing Ruifrok's rights to "visitation" and "physical custody." Moreover, after reading the instructions to the jury, the district court asked the parties whether they had any objections "[o]ther than the objections we've already dealt with."  When Liu's counsel raised the "intent" issue again, the district court responded "[y]ou don't have to do that," indicating that the district court would not revisit its earlier rulings.  On these facts, we conclude that Liu properly preserved this issue for appeal.

15

can be defined "by operation of law, court order, or legally binding agreement."  18 U.S.C. § 1204(b)(2)(A); see also United States v. Fazal-Ur-Raheman-Fazal, 355 F.3d 40, 45 (1st Cir. 2004) (looking to Massachusetts law to define "parental rights" in the absence of any court orders or binding agreements).

In this case, both parties agree that the "parental rights" at issue included Ruifrok's right, conferred by a court order and a legally binding agreement executed by Liu and Ruifrok, to visit WLR every weekend.  Liu asked the district court to emphasize that the term "parental rights" in the IPKCA refers to only physical custody rights, and does not include non-custodial rights such as the right to notification before travel or the right to deny consent for international travel.  The district court denied Liu's request to give this additional jury instruction.

Instead, the district court instructed the jury that "parental rights" means "the right to physical custody, whether joint or sole, and includes visitation rights."  Thus, Liu's proposed description of "parental rights" was "substantially covered" by the instructions given to the jury.  Sonmez, 777 F.3d at 688.  The district court's jury instructions made clear to the jury that the parental rights at issue were only physical visitation rights.  Accordingly, the district court did not

16

abuse its discretion in declining to instruct the jury using Liu's preferred definition.[3]

2.

Liu also challenges the sufficiency of the district court's jury instructions on the element of "intent to obstruct." Liu argues that the government was required to prove that she acted with a "significant purpose" of obstructing Ruifrok's visitation rights, and that the district court's instructions did not address this concept.

Rather than giving Liu's proposed jury instruction, the district court instructed the jury that the government must prove beyond a reasonable doubt that "the defendant [acted] with the intent to obstruct the lawful exercise of parental rights." The district court elaborated that "you must find that the defendant acted deliberately with the purpose of interfering with the parental rights of the other parent." By instructing the jury in this manner, the district court "substantially covered" the content of Liu's proposed instruction that the government was required to prove that Liu intended by her

---

[3] We also observe that the government's closing argument emphasized that the only parental rights at issue were Ruifrok's physical visitation rights. The government explained that the term "parental rights" referred to Ruifrok's right "to see his son every weekend" and on certain holidays. The government also stated many times in its argument that Liu was accused of obstructing Ruifrok's right to weekend visitation.

17

actions to interfere with Ruifrok's parental rights. <u>See</u> <u>Sonmez</u>, 777 F.3d at 688. Therefore, we hold that the district court did not abuse its discretion in refusing Liu's "significant purpose" instruction.

III.

For these reasons, we do not reach the merits of the issue whether the district court abused its discretion in excluding testimony from the various witnesses about Liu's stated travel plans. Further, we hold that the district court did not abuse its discretion in excluding Liu's mother's statements, or by denying Liu's proposed jury instructions. We therefore affirm the district court's judgment.

<u>AFFIRMED</u>