**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4130**

UNITED STATES OF AMERICA,

       Plaintiff – Appellee,

  v.

ALEXANDER CAMPBELL, a/k/a Munch,

       Defendant – Appellant.

**No. 18-4135**

UNITED STATES OF AMERICA,

       Plaintiff – Appellee,

  v.

ANTONIO SHROPSHIRE, a/k/a Brill, a/k/a B, a/k/a Tony,

       Defendant – Appellant.

**No. 18-4148**

UNITED STATES OF AMERICA,

       Plaintiff – Appellee,

v.

GLEN KYLE WELLS, a/k/a Lou, a/k/a Kyle,

            Defendant – Appellant.

_____

No. 18-4249
_____

UNITED STATES OF AMERICA,

            Plaintiff – Appellee,

      v.

ANTOINE WASHINGTON, a/k/a Twan,

            Defendant – Appellant.

_____

Appeals from the United States District Court for the District of Maryland, at Baltimore. Catherine C. Blake, District Judge. (1:16-cr-00051-CCB-2; 1:16-cr-00051-CCB-3; 1:16-cr-00051-CCB-5; 1:16-cr-00051-CCB-1)

_____

Argued:  October 31, 2019                    Decided:  June 24, 2020

_____

Before KEENAN, FLOYD, and RICHARDSON, Circuit Judges.

_____

Affirmed by published opinion.  Judge Richardson wrote the opinion, in which Judge Keenan and Judge Floyd joined.

_____

**ARGUED:**  David W. Fischer, Sr., LAW OFFICES OF FISCHER & PUTZI, PA, Glen Burnie, Maryland; Richard S. Stolker, UPTOWN LAW LLC, Rockville, Maryland; Jonathan Alan Gladstone, Annapolis, Maryland; Megan Elizabeth Coleman, MARCUSBONSIB, LLC, Greenbelt, Maryland, for Appellants.  Leo Joseph Wise, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:**  Robert K. Hur, United States Attorney, Derek E. Hines, Assistant United

States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

---

RICHARDSON, Circuit Judge:

A jury convicted Defendants Alexander Campbell, Antonio Shropshire, Glen Kyle Wells, and Antoine Washington of participating in a heroin-distribution conspiracy and related substantive-drug-distribution offenses. Among the Defendants with substantive charges, Washington was convicted of distributing heroin that resulted in the death of a young woman. The Defendants each argue that the district court erred in a host of ways. But finding no error, we affirm.

## I.    Factual background

On December 28, 2011, a nineteen-year-old woman, J.L., died from a heroin overdose. Throughout the day before, J.L. and her acquaintance, Kenneth Diggins, injected themselves with the drug. At some point, Diggins passed out. When he regained consciousness around 4 a.m., he noticed the color had drained from J.L.'s face. Although Diggins called 911, she was beyond saving.

J.L. and Diggins had bought their heroin from Antoine Washington. This was not Washington's first time selling heroin—nor was it his last. After J.L.'s death, Diggins continued to buy heroin, through a friend of his, from Washington. After a few months, Diggins resumed business directly with Washington. And just a year after J.L.'s death, Washington marketed the quality of the heroin he was selling by touting yet another recent overdose: "[S]omebody OD'd yesterday, and shit was crazy. That's how good the shit is I got. So hit me up." J.A. 931. That same week, Diggins himself overdosed and was hospitalized—only then did he stop purchasing heroin from Washington.

Washington's dealings with J.L. and Diggins were only a small part of a much larger drug business. Alongside Alexander Campbell, Antonio Shropshire, Glen Kyle Wells, and others, Washington sold heroin in and around Baltimore, from at least 2010 until 2016, when law enforcement broke up the operation. The Defendants worked together to sell heroin, sharing phones, sources, and customers.

Maryland and federal law enforcement jointly exposed the Defendants' heroin ring and obtained a multi-count federal indictment. During a three-week trial, the Defendants' customers testified about their purchases, the government played recorded calls arranging drug deals and discussing the Defendants' business, and an undercover officer described a controlled buy. The jury also learned that the heroin ring was aided by a now-former Baltimore City Police Officer, Momodu Gondo. Having already pleaded guilty to participating in the drug conspiracy, Gondo testified that he abused his office to help his co-conspirators evade the police. He also described a home-invasion robbery of another drug dealer that he committed at Washington's request. Gondo carried out this robbery alongside Wells and another former police officer, Jemell Rayam (who also testified). They stole money, jewelry, and heroin—most of which Wells sold—and split the spoils with Washington.

After hearing this evidence (and much more), the jury convicted the Defendants. The district court sentenced Washington to 264 months' imprisonment, Shropshire to 300 months' imprisonment, and both Campbell and Wells to 188 months' imprisonment.

5

**II.    Analysis**

The Defendants individually raise a total of six challenges to their convictions.  We reject each and affirm.

**A.    Expert medical testimony**

Washington argues the district court erred by admitting expert testimony on J.L.'s cause of death over his objection.  According to Washington, Dr. Southall's statements were inadmissible because they were testimony about an "ultimate issue"—the cause of J.L.'s death—and were not helpful to the jury.  *See* Fed. R. Evid. 702, 704(a).  First, Dr. Southall testified that "[t]he cause of [J.L.'s] death was heroin intoxication."  J.A. 1038.  The prosecution then asked, "*but for* the heroin J.L. took, would she have lived?"  *Id.* (emphasis added).  And the doctor answered, "Yes."  *Id*.  We review the district court's decision to permit this testimony for abuse of discretion and find none here.  *See United States v. Landersman*, 886 F.3d 393, 411 (4th Cir. 2018).

To begin with, we note that expert testimony addressing an ultimate issue is no longer categorically inadmissible.  Although the common law barred such testimony, "Rule 704(a) was designed specifically to abolish the 'ultimate issue' rule."  *United States v. Barile*, 286 F.3d 749, 759 (4th Cir. 2002).  Rule 704(a) provides that otherwise admissible opinion testimony "is not objectionable just because it embraces an ultimate issue."  Fed. R. Evid. 704(a).  But while Rule 704(a) removes a common-law ground for *excluding* testimony, it says nothing about whether an expert opinion *should be admitted* in the first place.  *See Barile*, 286 F.3d at 759.  For that, courts must look to Rule 702.

6

To analyze Washington's objection, we start with the text of Rule 702, which provides for the admission of expert witness testimony if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Referring to subsection (a), our Court has explained that whether testimony "assist[s] the trier of fact" is the "touchstone" of Rule 702. *Friendship Heights Associates v. Vlastimil Koubek, A.I.A.*, 785 F.2d 1154, 1159 (4th Cir. 1986) (internal quotations and citation omitted). And if not helpful to the jury's understanding, an expert's opinion is inadmissible. *Kopf v. Skyrm*, 993 F.2d 374, 377–78 (4th Cir. 1993). Washington focuses his argument on this helpfulness requirement of Rule 702.[1]

Washington argues that, because Dr. Southall testified about the "but-for cause" of death using the same but-for language as the jury instructions, Dr. Southall's opinion was an unhelpful legal conclusion. And we have recognized that "[e]xpert testimony that merely states a legal conclusion is less likely to assist the jury in its determination." *Barile*, 286 F.3d at 760; *see also United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) (noting

---

[1] We note that, even if an expert witness's opinion is admissible under Rule 702, Rule 403 permits the district court to exclude relevant opinion testimony "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." While Washington suggested to the district court that the doctor's testimony was "highly prejudicial," he neither explained to the district court why it was "unfairly" so nor why any "unfair prejudice *substantially* outweigh[ed]" the testimony's probative value. *See United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2008). In any event, Washington does not rely on Rule 403 on appeal.

that opinion testimony that states a legal standard or draws a legal conclusion is "generally inadmissible"). But this guidance on whether a legal conclusion is "likely to assist" is necessarily general: "The line between a permissible opinion on an ultimate issue and an impermissible legal conclusion is not always easy to discern." *McIver*, 470 F.3d at 562. And drawing that line requires a case-specific inquiry of the charges, the testimony, and the context in which it was made.

In appropriate circumstances, an expert may offer an opinion that applies the facts to a legal standard. And applying medical expertise to form an opinion on the cause of death is often the type of specialized knowledge that can help a jury. *See, e.g.*, *United States v. Chikvashvili*, 859 F.3d 285, 292−94 (4th Cir. 2017) (affirming the admission of a doctor's "expert opinion on causation" of death); *United States v. Alvarado*, 816 F.3d 242, 246 (4th Cir. 2016) (affirming the district court's admission of an expert witness' testimony that "without the heroin, [Thomas] doesn't die"); *United States v. Krieger*, 628 F.3d 857, 870−71 (7th Cir. 2010) (affirming "death results" conviction based on expert testimony identifying which drug, out of multiple, was the but-for cause of death); *see also In re Lipitor (Atorvastatin Calcium) Marketing, Sales Practices & Products Liability Litigation (No II) MDL 2502*, 892 F.3d 624, 646−47 (4th Cir. 2018) (discussing the frequent need for expert testimony to establish that a drug was the cause of death). Indeed, medical testimony about drug toxicity in the body and a cause of death as determined during an autopsy are generally well beyond the jury's common knowledge.

As a result, Washington argues that Dr. Southall's testimony was impermissible because she embraced the legal term of art "but-for." Indeed, difficult questions often

emerge when the expert's opinion relies on terms with "separate, distinct and specialized meaning in the law different from that present in the vernacular." *Barile*, 286 F.3d at 760 (cleaned up); *see also United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) (recognizing that expert testimony giving a legal conclusion was properly admitted given the technical legal issues involved with federal securities laws).

But we need not address those questions here because, contrary to Washington's assertion, Dr. Southall's opinion that heroin caused J.L.'s death employed commonly used vernacular. *See* J.A. 1038 (testifying that "[t]he cause of death was heroin intoxication" and answering "Yes" in response to counsel's question "[B]ut for the heroin J.L took, would she have lived?"). As the Supreme Court has explained, the "but-for requirement is part of the common understanding of cause." *Burrage v. United States*, 571 U.S. 204, 211 (2014). That phrase, like "results from," is a common way to express "that one event is the outcome or consequence of another." *Id.* at 212. To illustrate the point, the Supreme Court turned to America's pastime: If a team wins 1-0 after a batter hits a home run, then "every person competent in the English language and familiar with the American pastime would agree that the victory resulted from the home run. . . . [I]t is natural to say that one event is the outcome or consequence of another when the former would not have occurred but for the latter." *Id.* at 211–12.

The commonly understood meaning of "but for" and "results from" do not diverge from their legal meaning. So we have no trouble finding that the jury would understand those terms and that the expert could apply the facts to that understanding. The district judge thus acted well within its discretion in permitting the doctor to testify that "[t]he

9

cause of death was heroin intoxication" and that "but for the heroin J.L took [she would] have lived." J.A. 1038.

## B.    Jury instructions

Washington also challenges the jury instructions that described the government's burden of proof for the offense of distributing heroin resulting in death. As with the district court's evidentiary rulings, we review the district court's decision to reject a proposed jury instruction for abuse of discretion. *United States v. Sonmez*, 777 F.3d 684, 688 (4th Cir. 2015). In this circumstance, we will find an abuse of discretion only if the proffered instruction was:

> (1) A correct statement of the law;
> (2) Not substantially covered by the instructions given by the district court; and
> (3) Involved some point so important that the failure to give the instruction seriously impaired the defendant's defense.

*United States v. Hager*, 721 F.3d 167, 184 (4th Cir. 2013). And even if these factors are satisfied, we will not find reversible error unless the defendant can show that the entire record shows prejudice. *Id.*

Washington requested three special jury instructions to expand on the but-for causation standard: (1) that if there were "multiple sufficient causes independently, but concurrently, that could have" caused the death, then the jury must be convinced that "but for heroin" J.L. would not have died; (2) that it was the government's burden to show that there were no "other concurring sufficient causes" beyond the heroin; and (3) that the government must prove the heroin was not "merely a contributing or a significant" factor in J.L.'s death. J.A. 1505. The district court already included instructions that the

10

government had to prove that "but for the use of the drugs" J.L. would not have died and that "in the absence of the heroin" she would not have died. J.A. 1549–50.

Washington claims his proposed instructions are required by the Supreme Court's decision in *Burrage*. Not so. Though *Burrage* held that but-for causation was generally required to prove that death resulted, the Supreme Court acknowledged that but-for causation might *not* be required in the special circumstance where evidence establishes that multiple sufficient causes independently, but concurrently, caused death. 571 U.S. at 214. To illustrate, the Court described a victim who was simultaneously stabbed and shot by different assailants. *Id.* at 215. In that situation, the conduct of neither the stabber nor the shooter was the but-for cause of the victim's death. *Id.* Even so, the stabber would generally be liable for homicide. *Id.* Although the Supreme Court determined that this special circumstance did not apply in Burrage's case, it made clear that the special circumstance would permit a jury to find causation when two sufficient causes independently and concurrently caused death. *Id.* at 214−15.

Washington's first two proposed instructions seek to turn this special rule on its head. For example, his second proposed instruction suggests that, where two sufficient causes independently and concurrently cause death, a jury could *not* find causation is established: "It is the government's burden to prove beyond a reasonable doubt that there were not other concurring sufficient causes." J.A. 1505. But this misreads *Burrage*. The special rule identified by *Burrage* would only lessen the government's burden, permitting a finding of causation absent but-for cause where multiple, independent causes concurrently cause death. *See Burrage*, 571 U.S. at 218–19. Yet the government here did

11

not seek such an instruction nor did the jury instructions give the government the benefit of this special rule. *Compare id.* at 211 (explaining that but-for causation is established "if the predicate act combines with other factors to produce the result, so long as the other factors alone would not have done so—if, so to speak, it was the straw that broke the camel's back"), *with* J.A. 1550 ("The Government is not required to prove that the drugs distributed by the defendant to J.L. did not combine with other factors to produce death *so long as the other factors alone would not have done so*.") (emphasis added).

The district court's instructions made clear that the government had to prove that "but for the use of the drugs that the defendant distributed, J.L. would not have died." J.A. 1550. To the extent that Washington sought to reiterate that the heroin must be the but-for cause in his somewhat confusing proposed instructions, the district court's instructions more than adequately addressed that central idea. *See United States v. Savage*, 885 F.3d 212, 223 (4th Cir. 2018) (finding no abuse of discretion where the instructions given "substantially covered [the defendant's] requested instruction"). So we find the district court acted within its discretion in rejecting Washington's proposed instructions.

### C.    The home-invasion robbery

We turn next to Wells's claim that the district court should have excluded evidence of a home-invasion robbery. We also review that ruling for an abuse of discretion. *United States v. Basham*, 561 F.3d 302, 325−26 (4th Cir. 2009).[2]

---

[2] While Washington also raises this claim on appeal, it does not appear that he objected before the district court. We need not separately address plain error review for Washington on this claim because we find that the evidence was properly admitted.

Wells argues that evidence of the home-invasion robbery was impermissible propensity evidence. We disagree. Federal Rule of Evidence 404(b) bars the admission of "[e]vidence of a crime, wrong, or other act" to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1); *see also United States v. Lespier*, 725 F.3d 437, 448 (4th Cir. 2013). Rule 404(b) is limited to evidence of *other* crimes or wrongs—not evidence of the charged offenses. *United States v. Cooper*, 482 F.3d 658, 663 (4th Cir. 2007) ("Rule 404(b) only applies, however, to evidence relating to acts extrinsic to the conduct being prosecuted."). As a result, acts committed in furtherance of a charged conspiracy are not "other acts" evidence governed by Rule 404(b). *See United States v. Palacios*, 677 F.3d 234, 244–45 (4th Cir. 2012) (holding that a robbery and firing of a gun were "acts committed in furtherance of the conspiracy" and not "prior bad acts" governed by Rule 404(b)); *see also United States v. Lipford*, 203 F.3d 259, 269 (4th Cir. 2000) (holding that evidence of a shooting was relevant to the charged drug conspiracy and not limited by Rule 404(b)).

The robbery here was committed in furtherance of the charged conspiracy, so evidence of that robbery was not limited by Rule 404(b). At Washington's instigation, Wells joined with Officers Gondo and Rayam to rob a known drug dealer, Aaron Anderson, who had sold Washington heroin since 2010. Wells and Rayam went into Anderson's apartment while Gondo served as a look-out. Wells and Rayam left with around 800 grams of heroin, money, jewelry, and a firearm. Wells then sold much of the stolen heroin. And Gondo, Rayam, and Wells all split the money and gave Washington his cut.

13

In response, Wells contends that the home invasion was an entirely separate conspiracy. He characterizes the robbery as a "freelance" operation whose target objective was to steal cash, not drugs. Appellants' Br. 67. But the robbery of a drug dealer by members of an active drug conspiracy—who then sell the stolen heroin and split the proceeds—is evidence of the charged drug conspiracy. *Cf. United States v. Kennedy*, 32 F.3d 876, 884 (4th Cir. 1994) (holding that a multiple conspiracy instruction is not required unless the evidence shows that the defendants were involved only in "separate conspiracies *unrelated* to the overall conspiracy charged in the indictment") (internal quotations and citation omitted). And this 2015 robbery occurred *during* the charged drug conspiracy. *See Cooper*, 482 F.3d at 663 (citing *Kennedy*, 32 F.3d at 885).

Because evidence of the robbery was evidence of the drug conspiracy, it does not fall within the scope of Rule 404(b). And so the evidence of the home-invasion robbery was properly admitted by the district court.[3]

## D.     Joinder and severance

Another Defendant, Shropshire, challenges the district court's denial of his motion to sever his trial from Washington's. Shropshire contends that, since Washington was the only Defendant charged with distribution of heroin resulting in death, Shropshire should

---

[3] We note that the briefing in the district court on this issue was filed under seal. We cannot divine precisely why this material was sealed, or even if the district court granted the motion to seal this material. Given the heavy burden to seal criminal filings, *see Doe v. Public Citizen*, 749 F.3d 246, 265–69 (4th Cir. 2014), we direct the unredacted briefing and Volume V of the Joint Appendix be unsealed thirty days after this opinion is issued. If a valid justification remains for sealing—perhaps for J.A. 1808–09—we invite the parties to file a motion addressing the issue within the thirty-day period.

have been tried separately because evidence about J.L.'s death infected the jury's determination of his guilt.

Whether defendants are properly joined under Rule 8 of the Federal Rules of Criminal Procedure is a legal question we review de novo. *United States v. Mackins*, 315 F.3d 399, 412 (4th Cir. 2003). If defendants are improperly joined, severance is "mandatory and not a matter of discretion within the trial court." *United States v. Santoni*, 585 F.2d 667, 673 (4th Cir. 1978). But if joinder is proper under Rule 8, we review a district court's discretionary severance decision under Rule 14 for abuse of discretion. *United States v. Montgomery*, 262 F.3d 233, 244 (4th Cir. 2001).

Under Rule 8(b), defendants may be joined when they "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions." This requirement is satisfied here. These Defendants were all charged with participating in a drug conspiracy and with substantive counts arising from that same conspiracy. As alleged co-conspirators, Washington and Shropshire were properly indicted together, even though they were charged with separate substantive drug offenses. *See Santoni*, 585 F.2d at 673−74; *see also* Fed. R. Crim. P. 8(b) ("[D]efendants *may* be charged in one or more counts together or separately"; they "need not be charged in each count.") (emphasis added).

Even so, Rule 14(a) gives district courts the discretion to sever properly joined defendants where actual prejudice would result from a joint trial. *See* Fed. R. Crim. P. 14(a). But generally "we adhere to the rule that defendants charged with participation in the same conspiracy are to be tried jointly." *United States v. Akinkoye*, 185 F.3d 192, 197

15

(4th Cir. 1999). And the mere fact that evidence against one or more co-conspirator is stronger or more inflammatory than the evidence against others does not necessarily require severance. *See United States v. Hall*, 93 F.3d 126, 131−32 (4th Cir. 1996) (rejecting defendant's argument that severance was required where a co-defendant co-conspirator was charged with murder because it may have inflamed the passions of the jury), *abrogated on other grounds by Richardson v. United States*, 526 U.S. 813 (1999). Indeed, a conspirator is liable for all acts and all declarations in furtherance of the conspiracy. *See, e.g.*, *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 393 (1948). Rather, severance under Rule 14(a) is limited to those "rare" cases in which "there is a serious risk" that joinder would compromise a specific trial right or "prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Blair*, 661 F.3d 755, 768 (4th Cir. 2011) (internal quotations and citation omitted). And the defendant bears the "burden of demonstrating a strong showing of prejudice." *United States v. Goldman*, 750 F.2d 1221, 1225 (4th Cir. 1984).

Shropshire claims that the emotionally charged nature of Washington's heroin distribution that led to J.L.'s death rendered the jury unable to compartmentalize that offense and Shropshire's own drug charges. The evidence showed that Shopshire and Washington conspired with others to distribute heroin from 2010 through 2017. And the indictment charged that one overt act of the conspiracy was Washington's heroin distribution in December 2011 that caused J.L.'s death. Along with conspiracy, the

indictment charged Washington individually with the substantive offense of distributing heroin resulting in death.[4]

We find the district court acted well within its discretion in denying the motion for a severance. The district court found that much of the evidence would be admissible in separate trials, "greatly diminish[ing]" any prejudice. J.A. 102 (citing *United States v. Cole*, 857 F.2d 971, 974 (4th Cir. 1988)). Additional mitigating factors were readily apparent from the record: the evidence at trial surrounding J.L.'s death only mentioned Washington, and each Defendant engaged in the same general conduct—distributing heroin—though Washington's distribution to J.L. led to more severe consequences. And any concerns of prejudicial spillover were also mitigated by the district court's explicit instruction that the jury must consider each Defendant and each count separately, while also emphasizing that it would be improper to permit the jury's feelings about the nature of the crimes to interfere with the decision-making process. *See Zafiro v. United States*, 506 U.S. 534, 539 (1993) ("[L]ess drastic measures [than severance], such as limiting instructions, often will suffice to cure any risk of prejudice."); *see also Blair*, 661 F.3d at 769−70 (noting that cautionary language "substantially mitigated . . . any possible spillover of prejudicial evidence") (internal quotations and citation omitted).

---

[4] While the government might have charged Washington's co-Defendants with conspiracy to distribute heroin resulting in death, the government only charged Washington with the substantive offense, which imposes a longer statutory minimum period of imprisonment "if death or serious bodily injury results." 21 U.S.C. § 841(b)(1)(C).

Rule 14 leaves the risk-of-prejudice determination to the sound discretion of the district court. Because Shropshire fails to show that clear prejudice resulted from the joint trial, we conclude that the district court did not abuse its discretion.

### E.   Ineffective assistance of counsel

Shropshire also seeks to raise an ineffective-assistance-of-counsel claim. He contends that his counsel failed to protect his Sixth Amendment rights after documents were allegedly taken during a search of his jail cell. As Shropshire concedes in his brief, however, "[t]he matter of the removed documents remained unresolved and was never again discussed, evaluated[,] or questioned during the trial. . . . [T]he issue never was considered, much less resolved, by the trial court." Appellants' Br. 79–80. Since this record fails to "conclusively" show ineffective assistance, we decline to address it. *United States v. Faulls*, 821 F.3d 502, 507 (4th Cir. 2016); *see also United States v. King*, 119 F.3d 290, 295 (4th Cir. 1997).

### F.   Mug shots

Lastly, another Defendant, Campbell, contends that the district court abused its discretion in denying his motion for a mistrial after mug shots were displayed to the jury. A "denial of a defendant's motion for a mistrial is within the sound discretion of the district court." *United States v. Dorlouis*, 107 F.3d 248, 257 (4th Cir. 1997). As a reviewing court, we disrupt this discretion "only under the most extraordinary of circumstances." *Id.* "[I]f the jury could make [the] guilt determination[] by following the court's cautionary instructions" as to the potentially prejudicial material, then "no prejudice exists." *United States v. Wallace*, 515 F.3d 327, 330 (4th Cir. 2008) (cleaned up).

During trial, Campbell's counsel suggested through questioning that a witness misidentified Campbell "as a black male with short dreads." J.A. 485. Campbell's counsel then pressed the witness to confirm that the witness had not encountered Campbell with short dreads. On redirect, the government tried to show arrest photos from during the conspiracy that showed Campbell with dreadlocks. *See United States v. Johnson*, 495 F.2d 378, 384 (4th Cir. 1974). After the page was displayed for no more than three or four seconds, Campbell's counsel objected, and the exhibit was taken down. At sidebar, the district court agreed to exclude the photographs but refused to grant a mistrial because the images were not displayed long enough for anyone to draw any prejudicial inference about Campbell. The district court then instructed the jury to "completely disregard" the images. J.A. 547.

Given the limited time the photographs were displayed and the steps taken by the district court, we find that the court acted within its discretion in denying the motion for a mistrial after mitigating any risk of prejudice with a cautionary instruction.

\* \* \*

Despite the many claims of error, we find that the district court admirably handled this case. For the reasons given above, the judgment of the district court is

*AFFIRMED*.